274 F.2d 394
 James P. MITCHELL, Secretary of Labor, United States
Department of Labor, Appellant,
v.
L. H. JOHNSON, d/b/a L. H. Johnson Wholesale Company, Appellee.
James P. MITCHELL, Secretary of Labor, United States
Department of Labor, Appellant,
v.
J. Grady MADDEN, d/b/a J. G. Madden, Contractor, Appellee.
 Nos. 17833, 17834.
 United States Court of Appeals Fifth Circuit.
 Jan. 26, 1960, Rehearing Denied March 3, 1960.
 
 Robert E. Nagle, Atty., Bessie Margolin, Asst. Sol., Dept. of Labor, Washington, D.C., Earl Street, Regional Atty., Dept. of Labor, Dallas, Tex., Harold C. Nystrom, Acting Sol. of Labor, Sylvia S. Ellison, Atty., Dept. of Labor, Washington, D.C., for James P. Mitchell.
 Arthur C. Watson, Watson, Williams & Brittain, Natchitoches, La., for L. H. Johnson.
 John T. Campbell, Campbell, Campbell & Marvin, Minden, La., for J. Grady Madden.
 Before JONES, BROWN and WISDOM, Circuit Judges.
 JOHN R. BROWN, Circuit Judge.
 
 
 1
 In these two 17 injunction proceedings[1] filed by the Secretary of Labor, the question presented is whether the District Court properly dismissed the cases[2] under the coercive sanction of F.R.Civ.P. 37(b)(2)(iii), 28 U.S.C.A., for failure of the Secretary to produce statements of all persons interrogated in the presuit investigation.
 
 
 2
 In reaching the negative conclusion we have had to deal incidentally with other phases of the pretrial mechanism. From it we have gained the general impression that this case proves how these marvelous instruments ought not to be used. Steps which ought to facilitate an orderly trial of the real issues have so far kept two relatively simple cases from getting beyond the pleading stage. More judicial and counselor energy has been consumed in these abortive interim procedural maneuvers than would have been required for a full dress trial. That after two and one-half years the cases must now return for that trial is an unfortunate commentary on the capacity of the Rules to thwart and delay where one or both of the parties, as is certainly the case here, attempt to use or apply them too much by their letter, not enough by their spirit.
 
 
 3
 The complaint[3] filed on September 27, 1957, was the traditional one which we have held meets the requirements of a claim. Mitchell v. E-Z Way Towers, 5 Cir., 1959, 269 F.2d 129. Nonetheless the defendant filed a motion for more definite statement. We need not determine whether under E-Z Way that motion was good for the Secretary on January 24, 1958, filed a detailed sworn response.[4]
 
 
 4
 But despite this detailed response, no answer to the complaint was then filed, nor was one forthcoming until the Secretary's motion for default judgment some ten months later resulted in a quick, but adequate, answer within six days. That answer, filed before the precipitous and decisive action of the District Court now under review, is of great significance in considering the motion to produce which brought about the dismissal. For in categorical terms the defendant admitted the allegations, see note 3, supra, that 54 of its employees were engaged in interstate commerce within the meaning of the Act 'in the improvement, enlargement, extension, repair, maintenance, and reconstruction of instrumentalities of interstate commerce * * *.' Coverage being thus admitted, that left, as to Madden, the question of whether any of such employees had not received minimum wages and statutory overtime and whether the records were inadequate to reflect such facts.
 
 
 5
 The issues were not as reduced in Johnson as they were in Madden, but they were just as sharply defined.[5]
 
 
 6
 Meanwhile court and counsel became preoccupied with the motion to produce filed on October 15, 1957, separately but with the motion for more definite statement. It was a sweeping request for 'all reports (with exhibits attached thereto or filed therewith) made by * * * agents * * * of the Department of Labor * * * to the Administrator * * * regarding wages and hours and other conditions and practices of employment * * * in the (defendant's) business * * * as disclosed by each and all of the investigations and inspections made * * * from (specified date) to the date of institution of this action.'[6]
 
 
 7
 What was to be the first of a succession of hearings over the next year and one-half was held in November 1957. It resulted in the order of December 19, 1957-- a date and order to be remembered-- as the next thirteen months would see it first vacated ten months after its pronouncement and then reinstated just three months later. The order[7] required (1) production of copies of statements of all persons interviewed in the investigation and (2) a list of names and addresses of witnesses to be called by the Secretary ' and a full, but concise, summary of the nature of their expected testimony.'
 
 
 8
 The important thing is, though, that after a preliminary expression of what was called the District Court's 'basic philosophy in this type of litigation'-- the details of which dangerously approach the brink of special rules for this district in litigation with the Government-- the Court, in denying the original motion to produce and as the immediate preface to the in lieu order of December 19, 1957, note 7, supra, declared 'This motion * * * is too broad and will be denied.'
 
 
 9
 This was a determination that 'good cause' did not exist as F.R.Civ.P. 34 required.
 
 
 10
 In date January 1958, the Secretary filed a response[8] to the order of December 19, 1957. The Secretary objected to Item (1)-- all statements-- as defendant had not shown good cause for the production of statements which were privileged under F.R.Civ.P. 34 because of the confidential nature of the informer's evidence. As to Item (2), it asserted that the Secretary did not 'now know whom he may call as witnesses,'[9] but the response listed 48 names and addresses of 'person having knowledge of facts related to this case.' He then declined to furnish the summaries for the same reasons of confidential privilege.
 
 
 11
 This was met by defendant's motion to dismiss[10] under F.R.Civ.P. 37(b) for failure to comply with the Court's order to produce. To this the Secretary countered with a formal claim of privilege and confidentiality asserted by the Acting Administrator of the Wage & Hour Division, presumably to meet the requirements of United States v. Reynolds, 1953, 345 U.S. 1, 7, 73 S.Ct. 528, 97 L.Ed. 727, 733, 32 A.L.R.2d 382. This set forth in detail both the personal determination of the Executive departmental head and the underlying reasons for claiming the governmental privilege.
 
 
 12
 Reflecting the substantiality of the Secretary's position better than anything we can now say is the fact that the Court set the matter down for another hearing held on April 21, 1958. So impressed must the Court have been by the Secretary's earnest claim that the governmental policy reflected by the Act would be thwarted were administrative investigations handicapped from fear of reprisals by confidential informants that it called for the production of all of the requested papers in camera for inspection by the Court only. This the Secretary did.
 
 
 13
 The in camera inspection led to an important action. For the Court six months later entered its order of October 14, 1958-- one likewise to be remembered-- since, like the one of December 19, 1957, which it sought to supplant, it too would be supplanted by the supplanted order. The Court now found in substance that neither the initial motion to produce nor the Court's modification of it reflected by the December 19, 1957, order was supported by good cause for the production of papers having at least a qualified governmental privilege. The 'reconsideration of our orders of December 19, 1957 * * * in the light of the claims of privilege and confidentiality filed by the (Secretary)' the Court declared, led it to the 'view that the (order of December 19, 1957) should be revised.' And this ruling, the Court stated, 'not only is consonant with our standing pre-trial rule 2 and 2(a) * * *; it respects (the Secretary's) claim of confidentiality to the extent that it will not disclose the investigative methods employed by its agents.'[11]
 
 
 14
 Neither then, nor by its later action, did the District Court challenge the existence of a properly qualified governmental informer's privilege. On the contrary, it recognized both its existence and applicability in the circumstances of this case. Consequently, we are not faced with the problems dealt with in Mitchell v. Bass, 8 Cir., 1958, 252 F.2d 513, and Mitchell v. Roma, 3 Cir., 1959, 265 F.2d 633. We take the District Court at its own word.
 
 
 15
 But the revised order[12] of October 14, 1958, was now something quite different. What had started out as a motion to produce documents under F.R.Civ.P. 34 was now only an order to supply a list of 'the names and addresses of all witnesses intended to be called * * * at the trial' and to furnish 'a full, but concise, summary of the nature of their expected testimony * * *.'[13] In effect all it was was a coercive order to compel compliance by one party with the local pretrial Rule 2 and 2(a), note 11, supra, in advance either of the pretrial conference or the fixing of a date for such conference.[14] Again, we have no occasion either to explore the propriety of any such rule or fix the boundaries of its use. For, prior to the time of the final dismissal of the case which we shall discuss, the Secretary complied by filing a detailed summary as to each intended witness.
 
 
 16
 In view of what was soon to transpire, it is well to pause here to mark by a suitable last chance monument, the fact that up to this point, nothing the Secretary did or did not do either was, or was considered as, recalcitrant, obstructive, evasive or improper. On the contrary, the District Court had substantially sustained the Secretary's views.
 
 
 17
 But this was the deceptive calm of the eye of a storm and was soon to end. For it was the Secretary's action of October 30, 1958, which loosed the denunciation later expressed by the Court in the hearing of January 27, 1959-- that the Secretary's 'so-called responses * * * represent a deliberate effort to evade and avoid the effect of the Court's ruling of October 14, 1958, which attempted to give proper weight to the (Secretary's) claim of privilege.'
 
 
 18
 This action was the Secretary's response, filed on that date, to Item (1) of the order of October 14, 1958, note 12, supra. The response first incorporated by reference the responses earlier made to the motions for more definite statement and interrogatories, notes 4 and 5, supra, which listed the names of the employees, the workweeks, etc., in which minimum wages were not paid or overtime work not compensated. It then renewed the statement that 'as of this date, plaintiff does not know of any witnesses intended to be called * * * at the trial'[15] other than 'the employees * * * involved in violations and specifically referred to * * *' in the previous responses, as well as its investigative agents who were named. The response then listed the names and addresses of ten employees of the defendant[16] intended to be called as witnesses. What brought the roof down was this summary. 'The foregoing witnesses are expected to testify as to the nature of their duties, hours of work, wages paid, and other conditions of employment while employed by defendant.'[17]
 
 
 19
 By the latter part of November 1958 defendant filed another motion to dismiss for failure to comply. Not to be outdone in all of this movement, the Secretary then filed his motion for default judgment. This brought on the third hearing on January 27, 1959. In the atmosphere of this no-holds-barred contention, it was unfortunate that, presumably from an advertent mistake on the time of the hearing, the Secretary's counsel was not present. In any event, the Court proceeded to consider it again, and from the bench stated its reaction that this was 'a deliberate effort to evade and avoid the effect of the Court's ruling.' And then, with no facts subsequently intervening which would alter in any way the factors which had led it on December 19, 1957 and again on October 14, 1958, to 'give proper weight to (the Secretary's) claim of privilege,' the Court took the precipitous and decisive action. Stating that 'in view of this contumacious action by plaintiff's counsel,' the Court declared that it 'now recalls and withdraws its order of December 19, 1957.' The order gave the Secretary until January 31, 1959, to comply or suffer dismissal under F.R.Civ.P. 37(b)(2)(iii).[18]
 
 
 20
 Before that deadline the Secretary filed a further formal response on January 30, 1959. For the reasons of governmental privilege previously asserted and which the Court had theretofore fully credited, the Secretary respectfully declined to comply with Item (1) of the order of December 19, 1957, note 7, supra, for production of all of the statements obtained by the Secretary's agents. It then proceeded to set forth in elaborate detail a full narrative summary of what each of the witnesses intended to be called would testify. As this was a compliance, though tardy, with the order of October 14, 1958, but not that of December 19, 1957, the defendants for the third time immediately moved for dismissal for failure to comply.
 
 
 21
 This belated response fully met the order of October 14, 1958, so that question is precisely raised whether the initial response of October 30, 1958, which the Court treated as inadequate was, as found by it, a contumacious, purposeful, deliberate attempt to evade and avoid the Court's order, and if it was, whether that warranted the drastic action promised in the order of January 27, 1959, and soon made good on February 9, 1959, when the case was finally dismissed under F.R.Civ.P. 37(b)(2)(iii). We need not pass on the first since we think it so clear that the final dismissal under these circumstances was unjustified.
 
 
 22
 The Trial Court has, and must have, of course, a wide and flexible discretion in the daily guidance of a case through the preparatory stages looking toward the climax of a trial. And its orders whether under F.R.Civ.P. 16 and local rules for pretrial or under discovery mechanisms such as F.R.Civ.P. 34, or others, must be obeyed in good faith until set aside. But the absence of good cause for the production of papers determined by the Trial Court to have a qualified governmental privilege cannot be overcome through the mere disobedience of a party, or a failure on its part to comply with an order in the way the Court thinks proper. To be sure, the Court is not, and cannot be, left helpless in the face of such a situation. But the weapons employed must be suitable. This, we may assume, might have included an order of dismissal unless adequate summaries were, as was actually done on January 30, 1959, filed.
 
 
 23
 But here, the District Court, because the Secretary's counsel had not furnished 'a full, but concise summary of the nature of * * * (the) expected testimony of the witnesses' to be called the District Court repudiated its many times declared finding of a governmental privilege. Not only that, it compelled disclosure, not of the statements of these few persons to be called as witnesses, but of all statements 'obtained by agents (of the Secretary) concerning the alleged violations, which are the subject of this action.' See note 7, supra. To sustain that order is to hold that while production of statements of witnesses to be called requires some showing of good cause, such as unavailability of witnesses whose names have been disclosed, hostility or unwilliangness of the witness to grant interviews or give statements to the adversary and the like,[19] the failure to obey a pretrial order to furnish summaries (not documents, i.e., statements) eliminates the element of good cause altogether. But the punitive, coercive sanctions of F.R.Civ.P. 37(b)(2) may be employed, as the Rules plainly state, only to secure compliance with an order of production under Rule 34. That in turn contemplates that there was good cause as that Rule requires. And the 'good cause' cannot be the need for punishment.
 
 
 24
 The result is that the orders of dismissal may not stand, nor may the reinstatement of the orders of December 19, 1957. Since the Secretary had, although perhaps belatedly, complied prior to the dismissals with the orders of October 14, 1958, that ought to represent at least the low watermark back of which the parties may not now go. The cases ought to be ripe for pretrial, see note 11, supra, and an imminent trial on the merits.
 
 
 25
 At this late date, in considering production of ex parte statements it is not amiss to point out that as a 17 injunction suit the cases are quite different from suits for actual minimum wages and statutory overtime and penalties in which precise evidence as to all plaintiff-employees is essential. Here, proof need be made only that as to some employees, the work is of a kind subject to the coverage of the Act and as to some employees minimum wages or statutory overtime, or both, have not been paid, and as to some employees the records kept are inadequate under the regulations.[20] 0] While there may, of course, be occasions where the adversary's ex parte statements of expected witnesses whose identity is established by interrogatories and the like may be essential for preparation for trial, see note 19, supra, the issues on the trial of the 17 suit are not going to be resolved by what the statements say the witnesses say. The case will be made out or will fail depending upon what witnesses testify to in court.
 
 
 26
 Reversed and remanded.
 
 
 27
 JONES, Circuit Judge, concurs in the result.
 
 
 
 [1]
 Fair Labor Standards Act, 29 U.S.C.A. 217
 
 
 [2]
 There are actually two separate cases involving separate parties relating to entirely distinct business activities and each represented by separate counsel. Separate pleadings, orders, etc., were had in each of the cases, but in their procedural aspects they were practically parallel. They were so treated by the District Court, and we consolidated them for briefing ans submission
 
 
 [3]
 To facilitate discussion reference will generally be made to the Madden (17834) case except where specific reference is made to Hohnson (17833)
 Madden (17834): The complaint alleged that Madden engaged in the general contracting business as a 'dirt-moving contractor in connection with the construction of public streets, roads, and highways, as well as in hauling sand, gravel, clay-gravel, and asphalt mix utilized in connection with such construction activities.' Subsequent to March 1, 1956, it employed 'in interstate commerce, within the meaning of the Act, approximately 54 employees * * *' which 'employees are now, and have been engaged in the improvement, enlargement, extension, repair, maintenance, and construction of instrumentalities of interstate commerce * * *.' Since March 1, 1956, Madden has violated the Act by paying 'many of his employees' wages of less than one dollar per hour and 'by employing nany of his employees' in excess of 40 hours without statutory overtime. Additionally, Madden has failed to keep proper records.
 Johnson (17833): See note 5, infra for summary of complaint.
 
 
 [4]
 By six numbered items Madden sought, and the Secretary supplied under oath, the names of the employees who did not receive minimum wages and statutory overtime, the workweeks in which the violations occurred with a breakdown of the number of hours to each employee, and the same information (employee's names, hours, etc.) during the workweeks claimed not supported by adequate records showing the hours worked and wages paid
 
 
 [5]
 In Johnson (17833), the complaint alleged it was engaged in 'purchasing, receiving, storing, handling, and wholesale distribution of tobacco products, candies, drugs and other goods moving in interstate commerce and in the purchase, handling, storing and otherwise producing pecans and other goods for interstate commerce. * * * Substantially all of the tobacco products, candies, drugs, pecans and other goods purchased, received, produced and otherwise handled by (its) employees have been, and are being moved in interstate commerce, and/or being produced for interstate commerce.' Then followed allegation that Johnson was 'paying * * * many of his employees' at wages less than statutory minimum and working 'many of his employees' in excess of 40 hours without statutory overtime and had failed to keep adequate records
 To this Johnson filed a motion for definite statement which the Court thereafter treated as interrogatories under rule F.R.Civ.P. 33 to which the Secretary filed sworn response in detail. This response, in substance, was that the Secretary did not consider that all of Johnson's employees were covered, but that 26 were. As to these, 'some * * * were regularly and most * * * were at times engaged in interstate commerce' in the production of goods which were specifically identified as 'pecans.' In reply to specific numbered inquiries the response then set forth the name of the employees alleged to be engaged in interstate commerce and who were paid less than the statutory minimum or statutory overtime. It also set out in detail the respect in which the records kept were inadequate as to named employees and even attached copies of the Administrator's published regulations concerning record keeping.
 Johnson's answer to the complaint filed December 24, 1958, six days after the Secretary's motion for default judgment December 19, 1958, was virtually a general denial that it was subject to the act or had any employees engaged in the production of goods for commerce or in interstate commerce or that it had violated the mimimum wage or hours provision or record-keeping provisions. It even categorically denied Article VII that the Administrator had promulgated the regulations published in the Federal Register Title 29, Chapter 5, Code of Federal Regulations, Part 516, on record. Notwithstanding the Secretary's sworn response to the interrogatories did disclose the names of the employees concerned, it denied that any employee had worked excess hours without statutory overtime or had been paid less than the minimum wage, but 'since the plaintiff (Secretary) has refused to disclose any information on these points' it was unable specifically to answer those articles. Similarly it categorically denied that its employees produced goods which it knew would be shipped in interstate commerce, and then alleged with its own italics that 'defendant again shows that he is entitled to be informed as to what goods he is charged with shipping in interstate commerce, and what goods his employees produced * * *.' But as to this the interrogatory response had already specified 'pecans' as the goods produced.
 
 
 [6]
 There was an annexed supporting affidavit stating that investigation had been made and that the investigators advised that only one employee, a minor, was in noncompliance and defendant had not been advised of any other conditions of violation and has no means of being informed, and that the information disclosed by the documents sought was 'necessary to intelligently answer and defend the case.'
 
 
 [7]
 The order required production for inspection and copying of the following:
 '1. The statements of all witnesses obtained by agents and employees of plaintiff concerning the alleged violations which are the subject of this action;
 '2. The names and addresses of all witnesses intended to be called by the Government including Government agents, and a full, but concise, summary of the nature of their expected testimony;
 '3. All documentary exhibits to be offered in evidence by plaintiff at the trial.'
 The Secretary furnished all of the documentary exhibits under Item (3) and no question ever arose as to it.
 
 
 [8]
 On the same day, January 24, 1958, he filed sworn response and answers to the motion for more definite statement and interrogatories, see notes 4 and 5, supra
 
 
 [9]
 No criticism of that assertion could then be made. The defendants had not yet answered nor would they for nearly a year. The Secretary did not then know whether he would have to prove the whole case as in Johnson or only establish some specific violations as to one or more employees as in Madden as to whom there was finally no question of coverage
 
 
 [10]
 This resulted in the too hasty order of dismissal of March 18, 1958, in Madden, though not in Johnson, which the Court subsequently vacated on the hearing April 21, 1958
 
 
 [11]
 The District Court for the Western District of Louisiana promulgated standing 'Instructions to Attorneys in Pretrial Proceedings.' They may be found in the addendum to West's Louisiana Statutes Annotated, Court Rules, pp. 201, 211-213 (1956)
 Presumably these instructions are sent routinely to counsel in every case. Rule 2, as is true of so much of effective pretrial discovery, contemplates a voluntary compliance by counsel without the necessity of formal motions and coercive orders.
 '(2) At the earliest practicable date following receipt of this notice, the attorneys for the parties appearing in the case should exchange a list of names and addresses of witnesses they expect to use in the trial, and a short summary of the nature of their expected testimony. If new witnesses are discovered later, the same procedure should be followed as promptly as possible. In personal injury or death actions they should exchange promptly copies of all medical reports, or other documents bearing on quantum. Within a reasonable time before the pre-trial conference the attorneys should meet at a mutually convenient time and place, and:
 '(a) Exhibit to opposing counsel all documents or exhibits (other than those to be used for impeachment) including photographs, maps or plats intended to be offered at the trial by each party represented;
 '(b) Ascertain (i) which facts are to be admitted by all or any of the parties for the purposes of the trial, (ii) which facts, although not admitted, are not expected to be contested at the trial, as counsel are presently advised, and (iii) which issues of fact the respective parties intend to litigate at the trial.'
 Paragraph (4) contemplates counsel's preparation of a written pretrial stipulation prior to the pretrial hearing and provides in (5) for the pretrial hearing.
 At the time of the subsequent order of January 27, 1959, discussed infra, no pretrial conferences had been held and, indeed, that order itself vacated the pretrial conference then scheduled for February 9, 1959.
 
 
 [12]
 After referring to the order of December 19, 1957, this order required the Secretary 'to furnish defendant the following and only the following:
 '1. The names and addresses of all witnesses intended to be called by plaintiff at the trial, including his investigative agents, and a full, but concise summary of the nature of their expected testimony. If it is later determined that any other witnesses will be used, plaintiff is to furnish defendant with the same type of information as promptly as possible.
 '2. All documentary exhibits to be offered in evidence by plaintiff at the trial.'
 
 
 [13]
 The order, see note 12, supra, in Item (2) called for documentary exhibits, but these had long since been furnished and never were, nor are they now, the subject of any dispute
 
 
 [14]
 All parties have discussed the dismissal as though the order supposedly not complied with was one for production of documents under F.R.Civ.P. 34. That is essential to a dismissal under F.R.Civ.P. 37(b). There is considerable doubt that this is correct. Moore (3 Moore's Federal Practice, Paragraphs 16.01(4) (2d ed 1958) indicates that there was an attempt to change Rule 16(4) covering pretrials and Rule 33 interrogatories) to permit inquiry, both at the pretrial conference and by means of interrogatories, as to the witnesses which each side intends to call at the trial. After receiving comments on the proposed amendments, 'the Committee * * * concluded to withdraw the proposed amendment to Rule 33 permitting interrogatories calling for the names of witnesses to be used at the trial, leaving this matter to be dealt with under Rule 16. In considering the proposed amendment to Rule 16(4), the Committee is advised that many district judges, under the Rule as it now exists and in particular subdivision (6), are exercising the power to require the disclosure of the names of trial witnesses. The Committee is of the opinion that in many cases this practice is properly and wisely followed, but that this is a matter requiring decision according to the circumstances of each case. Since the power exists and is being exercised, the Committed has concluded that no amendment is required.'
 See also Barron & Holtzoff, 1 Federal Practice & Procedure 471 (Wright Supp.1958).
 
 
 [15]
 The defendants had still not answered the complaints and if the defendants were in the dark, the Secretary was flying blind as well
 
 
 [16]
 In Johnson (17833), the response listed two employees of the defendant by name and address who were 'expected to testify regarding defendant's employment and business records and to facts constituting commerce and the production of goods for commerce;' and eight employees by name and address who were 'expected to testify to the nature of their duties, hours of work, and wages paid, while employed by defendant.'
 
 
 [17]
 The investigative agents were listed by name and their testimony was summarized in considerably more detail and no real objection was ever made to these summaries
 
 
 [18]
 At the same time the Court denied the Secretary's motions for default judgment. This was not done on the ground that defendants had then filed their answers on November 24 and December 24, 1958, respectively. It was denied 'because Defendants, through their counsel, have been hotly contesting plaintiffs' claim at every stage of these proceedings, and they rightly considered that they did not have to file their answers to the complaints until final action was taken upon the Court's rulings with respect to defendants' motions to produce.' This was hardly permissible. The Rules do not so provide. On the contrary, the time and necessity of filing answer and utilization of discovery mechanisms operate independently. Mitchell v. E-Z Way Towers, 5 Cir., 1959, 269 F.2d 126
 
 
 [19]
 Factors showing good cause for production of statements in the possession of the adversary are discussed in 4 Moore, Federal Practice No. 26.23(8), at 1141-1144; 2 Barron & Holtzoff, Federal Practice and Procedure 796, note 61 at 496-497 and note 66 at 499 (1950 ed.) and (Wright Supp.1958) at 138, 141-142
 
 
 [20]
 We are not here concerned with the scope or terms of the final decree, declaratory or injunctive order. See, e.g., Mitchell v. Blanchard, 5 Cir., 1959, 272 F.2d 574