[Civ. No. 25099.   Second Dist., Div. Two.   Jan. 18, 1961.]

CARYL RICHARDS, INC. (a Corporation), Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; ISAAC KLUG et al., Real Parties in Interest.

Moss, Lyon & Dunn for Petitioner.

No appearance for Respondent.

Mitchell, Silberberg & Knupp for Real Parties in Interest.

NOURSE, J. pro tem.*—Petitioner is the defendant in an action brought against it and others by one Isaac Klug and his wife, Bertha Klug, real parties in interest here.

By the first cause of action of their amended complaint real parties in interest sought damages against petitioner for alleged injury to Bertha Klug's eyes as a result of a hair spray manufactured by petitioner having been sprayed into her eyes during a hairdressing procedure. This count of the amended complaint alleges in substance: That petitioner produced, sold and advertised a hair lacquer and spray known as "Just Wonderful"; that petitioner knew or should have known that said product was harmful and injurious to eyesight and knew, or should have known, that in the use of said product the operator employed by a beauty salon might permit such product to enter the eyes of a customer and that injury to the eyes or eyesight might result therefrom but that petitioner carelessly and negligently failed to label such product so as to warn of the danger to the eyes inherent in its use; that petitioner sold the product to a certain beauty salon for use in its business; that Bertha Klug employed said beauty salon to dress her hair and that in the course of that operation the operator caused said spray to come in contact with her eyes thereby injuring them; that by reason of the failure of the petitioner to properly label said product she incurred certain alleged special damages and general damages in the sum of $75,000 and her husband's consequential damage in the sum of $20,000.[1]

---

*Assigned by Chairman of Judicial Council.

[1] At paragraph V of the amended complaint, plaintiffs further alleged that another corporation which they also made defendant was the manufacturer of a hair lacquer or spray that was injurious to eyesight; that

Petitioner answered this complaint and by its answer put 'n issue all of the allegations thereof and as an affirmative defense pleaded contributory negligence on the part of the plaintiff, Mrs. Klug.

After the case was in issue the real parties in interest, pursuant to section 2030 of the Code of Civil Procedure, propounded 37 written interrogatories to petitioner. But one of these interrogatories, interrogatory Number 7, is involved here. It reads: "Name both by the common name and by the proper chemical name, according to generally accepted chemical nomenclature, every ingredient and the percentage and proportion thereof, in the hair lacquer and/or spray 'Just Wonderful' according to the formula in use at the time the answers to these interrogatories is [sic.] prepared." Petitioner answered this interrogatory but its answer was not in sufficient detail to satisfy real parties in interest and upon motion made by them the court ordered a further answer to this interrogatory. In response to this order petitioner made a further answer but did not state the exact proportions of each ingredient contained in the formula, stating in its answer that the exact proportions of the ingredients were a trade secret. After this answer was filed real parties in interest moved the court for an order imposing sanctions. By its motion it asked the court to strike the answer of petitioner and enter a default judgment against petitioner, for the relief demanded in the complaint or, in the alternative, an "order establishing for the purpose of this action that the product 'Just Wonderful' was and is injurious and harmful to the eyes and would cause the injuries to plaintiff Bertha Klug's eyes claimed in the complaint if it came in contact therewith as alleged in the complaint" and for reasonable expenses and attorney's fees in connection with the motion.

Upon the hearing of this motion, Judge Rhone expressly denied the motion to strike the answer of petitioner and to enter a default judgment against it, but entered an order reading as follows: "Motion . . . for order establishing that this certain product was injurious and harmful; motion denied on condition that within 15 days the defendant shall give further answers, giving details of proportions with their

---

it furnished that spray to the beauty salon in question and that lacquer was sprayed on Mrs. Klug's hair and into her eyes resulting in the injury to them complained of in the complaint. She further alleged that she did not know whether it was the hair lacquer or the hair spray which was sprayed into her eyes and was in doubt as to against which of the defendants she was entitled to redress.

common chemical names." He further ordered the petitioner to pay to the plaintiff the sum of $150 for costs and attorney's fees.

Petitioner then furnished to plaintiff a statement under oath which set forth the names of each of the ingredients of the hair spray in question together with the statement as to each that the formula contained less than a stated per cent of that ingredient.

Real parties in interest by motion again asked the same sanctions as they had requested by their former motion. This motion was heard by Judge McCoy who, on conflicting evidence as to whether the information given by petitioner was sufficient to enable real parties in interest to determine whether petitioner's product might be injurious to the eyes, found that it was not sufficient and that petitioner had wilfully failed to comply with the court's order and entered an order striking the answer of petitioner and ordering its default to be entered. Petitioner then filed its petition here seeking a writ of mandate to compel the respondent court to vacate its order striking petitioner's answer and entering its default and commanding it to reinstate the answer. To this relief petitioner is entitled if the respondent court abused its discretion in making the order in question.

One of the principal purposes of the Discovery Act (Code Civ. Proc., §§ 2016-2035) is to enable a party to obtain evidence in the control of his adversary in order to further the efficient, economical disposition of cases according to right and justice *on the merits.* (41 Mich.L.Rev. 205; 50 Yale Law Journal 711; *Pettie* v. *Superior Court,* 178 Cal.App.2d 680, 689 [3 Cal.Rptr. 267].) Its purpose is not "to provide a weapon for punishment, forfeiture and the avoidance of a trial on the merits." (*Crummer* v. *Beeler,* 185 Cal.App.2d 851, 858 [8 Cal.Rptr. 698]; *Mitchell* v. *Johnson,* 274 F.2d 394.)

The statute is to be liberally interpreted so that it may accomplish its purpose. The trial court has a wide discretion in granting discovery and by the provisions of section 2034 of the Code of Civil Procedure it is granted broad discretionary powers to enforce its orders but its powers are not unlimited.

Paragraph (b) (2) of section 2034, Code of Civil Procedure, and subparagraphs (i), (ii), (iii) and (iv) thereof, under which the court acted here, set forth the power of the court to impose sanctions and the sanctions which it may

impose for violation of its orders but they may not be interpreted as granting to the court the power to arbitrarily select the sanction it will impose.

The sanctions the court may impose are such as are suitable and necessary to enable the party seeking discovery to obtain the objects of the discovery he seeks but the court may not impose sanctions which are designed not to accomplish the objects of the discovery but to impose punishment. (*Crummer* v. *Becler, supra,* p. 858; *Mitchell* v. *Johnson, supra,* p. 401; *Hovey* v. *Elliott,* 167 U.S. 409, 414 [17 S.Ct. 841, 42 L.Ed. 215, 220]; *Hammond Packing Co.* v. *Arkansas,* 212 U.S. 322 [29 S.Ct. 370, 53 L.Ed. 530].)

What we have just said is made clear by the provisions of the statute. It provides in substance that if a party refuses to obey an order requiring discovery, such as that made by the court here, "the court may make such orders in regard to the refusal *as are just*" (emphasis added) and it then recites the sanctions that may be imposed. The first sanction specified is an order that the matter or fact concerning which an interrogatory is proposed shall be taken as established for the purposes of the action in accordance with the claim of the party obtaining the order; the second sanction is an order which prohibits the disobedient party from opposing a designated claim; the third sanction is an order striking out a pleading and rendering a judgment by default against the disobedient party.

We turn now to an application of the rules we have stated to the facts before us. Under the pleadings of the parties the following issues of fact were joined: (a) was the hair spray manufactured by petitioner injurious to the human eye; (b) was that hair spray supplied by petitioner to the beauty salon which applied it to real party in interest; (c) did the container in which the spray was contained have upon it an adequate warning that it would be dangerous if it entered the human eye: (d) was this hair spray used by the beauty operator in treating real party in interest; (e) if it was used did it get in her eye; (f) if it did get in her eye did it cause the injury to her eye of which she complains; (g) if she was injured by the spray, in what amount is she entitled to damages; and (h) was real party in interest guilty of contributory negligence.

Interrogatory Number 7 propounded to petitioner was designed to put the real parties in interest in possession of facts from which they could determine whether the spray was such

as might cause injury to the human eye. The most that would have been accomplished by a full and exact compliance by petitioner with the court's order would have been the revelation to real parties in interest of facts which might or might not establish their claim that the hair spray was injurious to the human eye. If petitioner had, in response to the interrogatory, revealed in detail its formula and that revelation had shown that the petitioner's product was such that it might be injurious to the human eye, the result would have been that real parties in interest would have secured evidence of one probative fact for use at the trial but would still have had the burden of proving all of the other issues of fact which we have set forth other than the issue as to contributory negligence and petitioner would have been left free to establish that defense if it could.

It seems to us self-evident that an order imposing as a sanction that, for the purposes of the trial the fact that petitioner's product was such as might cause injury to the human eye, would have accomplished the full purpose of discovery for it would have given real parties in interest the benefit of everything which they might have had from the discovery which they sought. It seems to us further evident that the order that the court made which deprived petitioner of any right to defend the action upon its merits was one designed not to accomplish the purposes of discovery but designed to punish petitioner for its failure to disclose in detail its secret process.

While under the statute the court undoubtedly has the power to impose a sanction which will accomplish the purpose of discovery, when its order goes beyond that and denies a party any right to defend the action or to present evidence upon issues of fact which are entirely unaffected by the discovery procedure before it, it not only abuses its discretion but deprives the recalcitrant party of due process of law. "The fundamental conception of a court of justice is condemnation only after hearing. To say that courts have inherent power to deny all right to defend an action and to render decrees without any hearing whatever is, in the very nature of things, to convert the court exercising such an authority into an instrument of wrong and oppression, and hence to strip it of that attribute of justice upon which the exercise of judicial power necessarily depends." (*Hovey* v. *Elliott, supra,* 167 U.S. 407, 414 [17 S.Ct. 841, 42 L.Ed. 215, 220].)

An order establishing for the purposes of the trial the fact

which real parties in interest sought to prove through the information sought by the interrogatory would not be depriving petitioner of due process for it was given the opportunity to try that issue and when it refused to obey the order of the court and suppressed the evidence it waived its opportunity to try the issue and the court, under the statute, was fully authorized to foreclose further trial of that question and to forbid the petitioner from offering evidence to overcome the presumption that arose from the suppression of the evidence. (Code Civ. Proc., § 1963, subd. 5) ; *Hammond Packing Co.* v. *Arkansas, supra,* 212 U.S. 322 [29 S.Ct. 370, 53 L.Ed. 530].)

Real parties in interest assert that the order made by the respondent court in the present proceeding is supported by the decision of the United States Supreme Court in *Hammond Packing Co.* v. *Arkansas, supra,* and by the decision of this court in *Unger* v. *Los Angeles Transit Lines,* 180 Cal.App.2d 172 [4 Cal.Rptr. 370, 5 Cal.Rptr. 71], opinion on denial of rehearing. We do not agree as both cases are distinguishable on the facts.

In Hammond the State of Arkansas commenced an action pursuant to a statute of that state to recover from Hammond certain statutory penalties for having engaged in business in the state while a member of a combination in restraint of trade contrary to the terms of the statute. The answer filed by Hammond by general and specific denials put into issue the allegations of the complaint. The attorney general for Arkansas then procured the issuance of a commission to take the testimony of certain officers, agents and employees of Hammond in the State of Illinois and to have produced there for inspection certain records of Hammond for the purpose of proving the allegations of the complaint. Hammond refused to produce the witnesses or its books and the attorney general then moved the court pursuant to the terms of the statute to strike out the defendant's answer and for judgment against it. This motion was granted and a judgment was entered against Hammond for the sum of $10,000. Upon appeal to the Supreme Court of the United States that court held that the effect of the Arkansas statute, which not only authorized the court but compelled the court to strike the answer and enter judgment by default, was to create a presumption that the evidence if produced would have proven the cause of action and that the defenses interposed to the complaint were without merit. It distinguished the case before it from the Hovey case

(the opinion in both cases being written by Mr. Justice White) upon the grounds that in the case before it the facts were such as to give rise to the presumption and that the order made, therefore, did not deny a trial upon the merits.

In *Unger* v. *Los Angeles Transit Lines, supra,* this court sustained an order of the trial court which had imposed the sanction of striking the defendant's answer and entering a judgment by default. In that case the defendant had refused to obey an order of the court that it furnish the plaintiff the names of witnesses to the accident in which plaintiff sustained the injuries claimed by her and this court on the authority of *Hammond Packing Co.* v. *Arkansas, supra,* held that the order of the trial court did not constitute punishment but was devised to enforce the discovery which had been ordered.

While in the present case petitioner's refusal to comply with the court's order gave rise to the presumption which we have heretofore mentioned, it could not be the basis for an inference or a presumption that all of the other essential facts alleged in the complaint of real parties in interest were true or that the allegations as to contributory negligence were untrue.

It may be noted that at the time the order in question here was made, Judge Rhone's order was in force and effect and that the court made the present order without vacating the order of Judge Rhone and, instead of enforcing the sanction which was implicit in the order of Judge Rhone, it imposed the most extreme sanction designated by the statute.

Let a peremptory writ of mandate issue requiring the respondent court to vacate the default of the defendant heretofore entered by it; to reinstate the answer of the defendant; and to take such further proceedings not inconsistent herewith as it may find proper.

Fox, P. J., and Ashburn, J., concurred.