Filed 7/12/13  Yung v. Yodle, Inc. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| KWONG HIU YUNG,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>YODLE, INC., et al.,<br><br>Defendants and Respondents. | H037420<br>(Santa Clara County<br>Super. Ct. No. CV140572) |

Appellant Kwong Hiu Yung appeals from an order dismissing his action with prejudice after the trial court granted the motion by respondents Yodle, Inc. and Administaff Companies II, LP for terminating sanctions and declaring him a vexatious litigant.  We find no error and affirm.

## I.  Factual and Procedural Background

Appellant was employed by respondents from October 2007 until his employment was terminated in February 2008.  Christina Kotowski, respondents' counsel, gave Yung three checks in the total amount of $5,143.13 for various business expenses at a conference before the Labor Commissioner in August 2008.  Appellant refused to cash the checks.

In April 2009, appellant filed a complaint for breach of contract, wrongful termination, misrepresentation, and defamation against respondents. In March 2010, appellant began representing himself.

On January 7, 2011, respondents served notice that appellant's deposition was scheduled for February 9, 2011. Though appellant appeared for his deposition, it did not go forward. Appellant "rudely demanded" that the videographer give him more tea and that the video camera be moved to the other side of the room. He complained that he was the only person to be videotaped and refused to sit down and be sworn for his deposition. After Kotowski told the court reporter and the videographer that she wanted to put a statement on the record, the videographer began his prefatory statement on the record. However, appellant began shouting in Cantonese to drown out his statement. Appellant then grabbed the video camera and ripped out the cables. Though appellant was repeatedly asked to leave, he refused to do so. Building security was notified. Two police officers from the San Francisco Police Department also arrived at the scene. The videographer stated, "I've never had anything like this happen in 12 years."

Appellant later filed misconduct charges against both the court reporter and respondents' counsel with the Court Reporters Board of California and the California Bar respectively.

On February 23, 2011, respondents filed motions to compel appellant's deposition and for sanctions. Following a hearing on April 29, 2011, the trial court issued an order, which, among other things: (1) compelled appellant's deposition to be taken no later than May 19, 2011, in the offices of respondents' counsel in San Francisco, (2) authorized security personnel to be present during the deposition, and (3) ordered appellant to pay $3,112 in sanctions by no later than May 19, 2011. Appellant was also prohibited from conducting any discovery until after his deposition was completed.

After the tentative ruling was posted, Kotowski offered appellant four dates for his deposition: May 11, 13, 16, or 17. Appellant rejected those dates on the ground that he would be in Washington D.C. during that period. The following day, however, he agreed to be available for deposition on May 5, 2011. On April 29, 2011, respondents served notice that the video deposition was scheduled for 9:30 a.m. on May 5, 2011, at the office of their counsel and that a Cantonese interpreter would be provided. The letter accompanying the notice requested that appellant not arrive before 9:20 a.m.

At the time of the parties' agreement for scheduling of the deposition, appellant had a pending motion to compel discovery and exclude from discovery his personnel records related to a prior employment. Appellant was aware that tentative rulings were generally issued after 2:00 p.m. on the day before a scheduled hearing date. The hearing on appellant's motion was scheduled for May 6, 2011.

Beginning on April 30, 2011, appellant and Kotowski began exchanging e-mails regarding the scheduled deposition. In his first e-mail, appellant asserted that the April 29 order did not prevent him from entering the building in which respondents' counsel had its offices and he needed more than 10 minutes "to prepare." Appellant also demanded that the location of the deposition be changed to San Jose and that he be allowed to choose the interpreter. Kotowski responded that the order specified that the deposition would occur in San Francisco. She also explained that the security guard did not arrive until 9:15 a.m. and suggested that appellant prepare in one of the local coffee shops.

The following day, appellant sent an e-mail stating that since he would be taking public transportation to San Francisco, he could not guarantee that he would arrive within the 10-minute window period between 9:20 a.m. and 9:30 a.m. He then stated that the deposition "should" be delayed from 9:30 a.m. to 10:00 a.m. When Kotowski reiterated that the deposition would begin at 9:30 a.m., appellant sent her a Caltrain schedule and

3

stated that it would be difficult for him "to time his arrival into a 10-minute window." He also stated that if she were unwilling to delay the deposition by half an hour, the deposition should be rescheduled. Kotowski replied that he was not being asked to time his arrival into San Francisco within a 10-minute period, noted that he had not had a problem with the 9:30 a.m. start time when they spoke at the courthouse, and warned him that if he did not appear on time on May 5, she would ask the court to dismiss his lawsuit and to require him to pay for the expenses of the second deposition.

On May 2, 2011, appellant responded by pointing out that he had arrived for his first deposition around 9:00 a.m. for the 9:30 a.m. deposition and that he could not guarantee that he would arrive at 9:20 a.m. for the 9:30 a.m. deposition. He concluded by stating that if she could "not offer [him] 30 minutes of leeway, then [he could] not agree to such unreasonable conditions." Later that afternoon, appellant sent another e-mail in which he stated that if she was "unwilling to delay the official start of the deposition by half an hour" to accommodate his commute, then she should cancel the deposition. He also stated that "[u]nless a firm agreement is reached by Tuesday 05/03, we should schedule for another date." The next day, Kotowski responded that the deposition would begin at 10:00 a.m., and that there would be "no further changes to this deposition."

On May 3, 2011, appellant sent an e-mail to Kotowski, which stated that the deposition would occur on May 5, 2011, he would "try his best to arrive between 09:20—09:30 but [could] only guarantee starting at 10:00. Plan to start the deposition in earnest at 09:45. In any event, the plaintiff shall be allowed to enter [counsel's] office 09:20 to prepare for the deposition and to acclimate to the deposition setup. [¶] Since the Santa Clara Superior Court announces tentative rulings for discovery motions 14:00 Thursday 05/05, let's schedule for a half-hour break at 14:00. Reply to confirm that there will be a half-hour break at 14:00."

4

At 6:22 a.m. on May 4, 2011, appellant sent an e-mail to Kotowski that stated: "Since you failed to confirm a half-hour break at 14:00 Thursday 05/05, please cancel deposition." He also indicated that he did not want to be "trapped in a full-day deposition past 14:00 because oral arguments for tentative rulings of discovery motions have to [be] requested between 14:00 and 16:00 Thursday." Kotowski responded the same day, and stated that the "deposition [would] go forward tomorrow at 10:00 a.m. as scheduled. Adequate time will be provided for both parties to review the tentative ruling once it is posted." Appellant then sent an e-mail in which he cancelled the deposition on the ground that Kotowski had failed to finalize the details of the deposition by May 3, 2011.

On May 5, 2011, appellant did not appear for his deposition. On the same day, a ruling tentatively denying his motion to exclude his personnel records from discovery was posted. Appellant informed Kotowski that afternoon that he intended to contest the tentative ruling the following day. Kotowski appeared at the hearing, but appellant did not. The tentative ruling was adopted.

On May 12, 2011, appellant e-mailed Kotowski and informed her that he would be returning from Washington D.C. on May 18 and would be available for his deposition on May 19. Kotowski responded by stating that she intended to proceed with a motion for terminating sanctions.

On May 19, 2011, appellant sent an e-mail to Kotowski and stated that respondents could deduct the amount of the sanctions awarded to them from the amount that respondents owed him and that respondents would then owe him $2,064.13. Appellant had not attempted to cash the three checks given to him by Kotowski in August 2008 until May 6, 2011. By that time, however, the accounts apparently had been closed.

On May 23, 2011, respondents filed motions for terminating sanctions and to declare appellant a vexatious litigant. Appellant filed opposition to the motions.

5

Following a hearing, the trial court granted the motion for terminating sanctions, dismissed the action with prejudice, and declared appellant a vexatious litigant.

Appellant then filed a motion to set aside the order dismissing the action pursuant to Code of Civil Procedure section 473, subdivision (b).  Appellant argued that his violation of the April 29 order was "was not willful, but due to inadvertence, surprise, and/or excusable neglect."  Appellant also sought attorney's fees and costs.  The trial court denied the motion as well as the request for attorney's fees and costs.


## II.  Discussion

### A.  Discovery Sanctions

### 1.  Standard of Review

This court reviews a trial court's selection of a particular discovery sanction for abuse of discretion.  (*Kuhns v. State of California* (1992) 8 Cal.App.4th 982, 988.)  "We view the entire record in the light most favorable to the court's ruling, and draw all reasonable inferences in support of it.  [Citation.]  We also defer to the trial court's credibility determinations.  [Citation.]"  (*Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 765 (*Slesinger*).)  A sanction order is " ' ' "subject to reversal only for manifest abuse exceeding the bounds of reason." ' ' "  (*Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc.* (2008) 163 Cal.App.4th 1093, 1102.)  However, a sanctions order that was "designed not to accomplish the purposes of discovery but designed to punish" a party may implicate constitutional due process by depriving the party of the right to pursue or defend a lawsuit on its merits.  (*Caryl Richards, Inc. v. Superior Court* (1961) 188 Cal.App.2d 300, 305 (*Caryl Richards*).)  Under these circumstances, our review is de novo.  (*Ibid.*)

6

## 2. Terminating Sanctions

"The purpose of the discovery statutes is to enable a party to obtain evidence under the control of his adversary in order to further the efficient and economical disposition of a lawsuit." (*Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 793.) The court may impose sanctions "against anyone engaging in conduct that is a misuse of the discovery process." (Code Civ. Proc., § 2023.030.) A misuse of the discovery process includes disobeying a court order to provide discovery. (Code Civ. Proc., § 2023.010, subd. (g).) Thus, terminating sanctions are authorized where a party has failed to obey an order compelling attendance at a deposition. (Code Civ. Proc., § 2025.450, subd. (d); *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 991.) "The court may impose a terminating sanction by . . . [¶] . . . [¶] . . . [a]n order dismissing the action, or any part of the action, of that party." (Code Civ. Proc., § 2023.030, subd. (d)(3).) "[T]he trial court may impose sanctions that ' " ' "are suitable and necessary to enable the party seeking discovery to obtain the objects of the discovery he [or she] seeks but the court may not impose sanctions which are designed not to accomplish the objects of the discovery but to impose punishment.' " ' " [Citations.]" (*Rail Services of America v. State Comp. Ins. Fund* (2003) 110 Cal.App.4th 323, 331-332 (*Rail Services*), italics omitted.)

Here, appellant's conduct prevented his deposition from going forward on February 9, 2011. The trial court then issued the April 29 order, which compelled appellant's deposition to be taken no later than May 19, 2011. Respondents offered appellant four dates, which he rejected. After appellant agreed to appear on May 5, 2011, respondents noticed his deposition. Appellant did not serve objections to his second deposition notice and he did not move for a protective order from the court. (Code Civ. Proc., § 2025.410, subds. (a) [any error in deposition notice is waived unless objections are served three calendar days prior to the deposition], (c) [party may also seek order staying taking of deposition].) Thus, the deposition notice was effective to require

7

appellant to appear on May 5, 2011. (Code Civ. Proc., § 2025.280, subd. (a).) Even assuming that he had a valid reason for refusing to appear at his second scheduled deposition, he waived the issue. Since there is substantial evidence that appellant misused the discovery process by disobeying a court order that his deposition be taken, the trial court did not abuse its discretion in imposing terminating sanctions.

Relying on *Caryl Richards*, *supra*, 188 Cal.App.2d 300, *Newland v. Superior Court* (1995) 40 Cal.App.4th 608, 610 (*Newland*), *McArthur v. Bockman* (1989) 208 Cal.App.3d 1076, 1078 (*McArthur*), *Rail Services*, *supra*, 110 Cal.App.4th 323, *Slesinger*, *supra*, 155 Cal.App.4th 736, and *Thomas, Head & Greisen Employees Trust v. Buster* (9th Cir. 1996) 95 F.3d 1449, 1458 (*Buster*), appellant contends that he is entitled to de novo review because the order dismissing his action with prejudice violated his federal and state constitutional right to due process of law and is reversible per se. None of these cases supports appellant's position that he has been deprived of due process.

In *Caryl Richards*, *supra*, 188 Cal.App.2d 300, the plaintiff sought damages for injuries allegedly caused by the defendant's hair spray. (*Id.* at p. 301.) Despite repeated interrogatories, the defendant refused to disclose the chemical composition of its hair spray. (*Id.* at p. 302.) The trial court then issued an order requiring the defendant to provide the requested information. (*Id.* at pp. 302-303.) After the defendant provided some information, the trial court concluded that the information was insufficient to allow the plaintiff to determine whether the hair spray would injure a person's eyes and entered an order striking defendant's answer and ordering that its default be entered. (*Id.* at p. 303.) *Caryl Richards* reasoned: "While under the statute the court undoubtedly has the power to impose a sanction which will accomplish the purpose of discovery, when its order goes beyond that and denies a party any right to defend the action or to present evidence upon issues of fact which are entirely unaffected by the discovery procedure before it, it not only abuses its discretion but deprives the recalcitrant party of due process

8

of law." (*Id.* at p. 305.) In contrast to *Caryl Richards*, here, appellant did not refuse to respond to one discovery request regarding a limited area, he refused to be deposed about anything. Thus, the terminating sanction order in the present case serves the purposes of discovery since there are no "issues of fact which are entirely unaffected by" appellant's refusal to be deposed. (*Ibid.*)

*Newland*, *supra*, 40 Cal.App.4th 608, held that the trial court abused its discretion in ordering terminating sanctions based solely on the failure to pay a monetary sanction. (*Id.* at p. 610.) Here, appellant also disobeyed a court order to have his deposition taken.

In *McArthur*, *supra*, 208 Cal.App.3d 1076, the plaintiffs brought an action seeking compensatory and punitive damages for breach of contract and fraud. (*Id.* at p. 1079.) After much discovery had been completed, the trial court granted the plaintiffs' motion to take the defendants' deposition as to their financial condition. (*Id.* at pp. 1079-1080.) When the defendants did not appear at their deposition, the plaintiffs' motion for terminating sanctions was granted. (*Id.* at p. 1080.) *McArthur* reasoned: "'[T]he sanction should not operate in such a fashion as to put the prevailing party in a better position than he would have had if he had obtained the discovery sought and it had been completely favorable to his cause.' [Citations.] [¶] . . . [¶] . . . The only possible prejudice suffered by the [plaintiffs] as a result of the [defendants'] failure to appear for these specific depositions was the risk that at trial they would be unable to obtain a punitive damage award commensurate with the [defendants'] actual wealth. This prejudice could have been eliminated, however, by sanctions short of striking the [defendants'] answer and cross-complaint." (*Id.* at p. 1081.) Thus, *McArthur* held that the trial court had abused its discretion in issuing terminating sanctions. (*Id.* at pp. 1078, 1081.) Unlike the circumstances in *McArthur*, if respondents had obtained appellant's deposition and "'it had been completely favorable to [their] cause,'" respondents would have obtained appellant's binding admissions that would have defeated his claims of

9

breach of contract, misrepresentation, wrongful termination, and defamation. (*Id*. at p. 1081.) Thus, the only way to eliminate the prejudice to respondents in the present case was the dismissal of appellant's lawsuit. (See *Rail Services*, *supra*, 110 Cal.App.4th 323, 331-332 [the trial court did not abuse its discretion in dismissing a cause of action after the plaintiff refused to provide discovery as to that cause of action].)

In *Slesinger*, *supra*, 155 Cal.App.4th 736, the plaintiff hired an investigator, who obtained the defendant's confidential documents by breaking into the defendant's offices and secure trash receptacles. (*Id.* at p. 740.) The investigator then provided the documents to the plaintiff and its attorneys, who reviewed them but did not keep any records of the documents. (*Ibid.*) The plaintiffs also withheld information about the investigator's activities from the defendant and the court for many years. (*Ibid.*) *Slesinger* held that a trial court has "inherent power to issue a terminating sanction when a plaintiff's misconduct is deliberate, is egregious, and makes lesser sanctions inadequate to ensure a fair trial" and that the trial court did not abuse its discretion in dismissing the plaintiff's case. (*Ibid.*) Though appellant's conduct in the case before us was not as egregious as that in *Slesinger*, it involved a deliberate violation of the April 29 order and lesser sanctions are inadequate to ensure a fair trial for respondents.

In *Buster*, *supra*, 95 F.3d 1449, the district court imposed civil contempt and contempt sanctions on the defendants. (*Id.* at p. 1458.) *Buster* rejected the defendants' due process challenge on the ground that they had ample notice and an opportunity to oppose the imposition of contempt sanctions. (*Ibid.*) Similarly, here, appellant's due process challenge fails. He had notice of respondents' motion for terminating sanctions, filed opposition, and made his arguments at a hearing before the terminating sanctions were imposed.

In reviewing the superior court's ruling de novo, we find no merit to appellant's contention that he was deprived of due process. Appellant contends that the superior

10

court disregarded evidence that he intended to comply with the order but respondents refused to schedule his deposition on May 19. Thus, he claims that the superior court issued the dismissal order solely to punish him for actions unrelated to the discovery order. We disagree. As previously stated, the parties agreed on a date for the deposition within the 20-day period set forth in the order. Appellant neither served objections to his deposition notice nor moved for a protective order. Thus, appellant defied a court order by failing to appear at his second scheduled deposition. Respondents were not required to accommodate appellant's very belated request to change the date of the deposition.[1] "The court is not required to have infinite patience in these situations. A party who is unwilling to . . . perform[] the obligations of litigation with diligence should not be surprised when the right to proceed is lost." (*Jerry's Shell v. Equilon Enterprises, LLC* (2005) 134 Cal.App.4th 1058, 1069.) There is no evidence to support appellant's claim that the trial court considered factors beyond the scope of the discovery order.

Appellant also argues that the trial court misinterpreted the language of the order.

The April 29, 2011 order states in relevant part: "Within 20 calendar days from this order, Plaintiff shall appear and testify under oath for deposition by Defendants at the

---

[1] Appellant asserts that "the Superior Court manifested its strong disapproval of [his] having cancelled his May 5th deposition" and "expressed outrage at [his] request for monetary sanctions." (Boldface & italics omitted.) Thus, appellant appears to be arguing that the superior court's comments establish that it was punishing him for actions unrelated to the discovery order. There is no merit to this argument. First, appellant has cited to the transcript of the hearing on the motion to vacate the dismissal order, and not to the transcript of the hearing on the motion for sanctions. Second, the superior court stated: "I'm going to deny the motion. The plaintiff's behavior in how he handled this clearly warranted that order. [¶] I have a proposed order, which I'll simply indicate the denial." There is nothing punitive in this statement. Third, the superior court later stated: "I will also comment consistent with the behavior in this case. The request for $5,400 sanctions for that order, I'll put it as simply that's outrageous." In our view, the trial court accurately characterized appellant's request.

11

offices of Defendants' counsel, One Embarcadero Center, Suite 2340, San Francisco, California 94111.  Defendants may videotape Plaintiff's deposition."

Appellant claims that "[n]othing in the [April 29 order] required [him] to sit for his deposition on May 5th, to have his deposition taken on the very first date he agreed to sit for his deposition, or to refrain from cancelling a scheduled deposition at any time."  This claim is meritless.  The trial court's interpretation of the order was correct.  By disregarding a valid deposition notice within the 20-day period to which he served no objections and sought no protective order from the court, appellant failed to obey the April 29 order.

In his reply brief, appellant argues that the notice for his deposition on May 5 was facially defective because there was no evidence that he had agreed to be served by electronic mail.  This issue has been forfeited because appellant failed to serve written objections on this ground.  (Code Civ. Proc., § 2025.410, subd. (a).)

### 3.  Monetary Sanctions

The trial court may also impose monetary sanctions.  (Code Civ. Proc., § 2023.030, subd. (a).)

Relying on *Newland*, *supra*, 40 Cal.App.4th 608, appellant asserts that he "acted within his right when he directed Respondents to deduct the money he owed them from the amount they had previously admitted they owed him."  *Newland* is distinguishable from the present case.  In *Newland*, one of the defendants sought to offset the $750 in discovery sanctions imposed on him by the trial court against the $67.06 in appeal costs awarded to him by the appellate court.  (*Id.* at pp. 611-612.)  *Newland* stated:  "The trial court was in error in concluding that those costs were a matter for appellate court enforcement.  They were, instead, 'a matter solely for consideration in the lower court.' [Citations.]"  (*Id.* at p. 616.)  Thus, *Newland* held that the offset was appropriate.  (*Ibid.*)  However, here, appellant was seeking to offset checks that respondents had given him for

12

reimbursement of business expenses at a conference before the Labor Commissioner in August 2008. For unknown reasons, appellant did not attempt to cash these checks until May 2011. Unlike in *Newland*, these costs were not a matter for consideration by the trial court in determining whether appellant had complied with the April 29 order. Accordingly, the trial court did not err in finding that appellant failed to pay the monetary sanctions.

## B. Vexatious Litigant

Appellant contends that the trial court erred in declaring him a vexatious litigant. We disagree.

A vexatious litigant is defined as a person who, "while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay." (Code Civ. Proc., § 391, subd. (b)(3).)

"The trial court exercises its discretion in determining whether a person is a vexatious litigant. Review of the order is accordingly limited and the Court of Appeal will uphold the ruling if it is supported by substantial evidence. Because the trial court is best suited to receive evidence and hold hearings on the question of a party's vexatiousness, we presume the order declaring a litigant vexatious is correct and imply findings necessary to support the judgment. [Citations.]" (*Golin v. Allenby* (2010) 190 Cal.App.4th 616, 636.)

Here, as appellant concedes, he filed two unmeritorious ex parte applications and one motion. First, he filed an improper ex parte application to exclude his personnel records obtained from a prior employer. The application was denied because he failed to satisfy the requirements for ex parte relief. He then brought a noticed motion in which he argued that his employment records were irrelevant and "private." The trial court denied

13

the motion. Second, appellant filed an improper ex parte application to compel further responses to form interrogatories. He sought the contact information of witnesses, who were officer, directors, managing agents, or employees of respondents, even though respondents had indicated that they could be contacted through respondents' counsel. He also sought details and documentation regarding respondents' insurance policies even though no trial date or mandatory settlement conference had been set. After appellant brought a noticed motion, it was also denied on substantive grounds. Third, though appellant now concedes he acted "inappropriately" at his deposition in February 2011, he filed misconduct charges against both respondents' counsel and the court reporter with the California Bar and the Court Reporters' Board of California respectively. None of appellant's filings had any "'reasonable probability of success'" (*Morton v. Wagner* (2007) 156 Cal.App.4th 963, 972), and thus they were frivolous or solely intended to cause unnecessary delay.

Appellant also conducted unnecessary discovery. He attempted to depose 11 individuals simultaneously in Fairfax, Virginia. However, the present litigation had no connection to Fairfax, Virginia, and the majority of the individuals identified by appellant lived in the New York metropolitan area and one lived in Texas. Appellant also served form interrogatories on 10 individuals who were not parties to the present action. Appellant claims that this discovery was propounded due to his limited understanding of discovery rules. However, "'"[w]hen a litigant is appearing in propria persona, he is entitled to the same, but no greater, consideration than other litigants and attorneys [citations]. Further, the in propria persona litigant is held to the same restrictive rules of procedure as an attorney [citation]." [Citations.]' [Citation.] In other words, when a litigant accepts the risks of proceeding without counsel, he or she is stuck with the outcome, and has no greater opportunity to cast off an unfavorable judgment than he or she would if represented by counsel." (*Burnete v. La Casa Dana Apartments* (2007) 148

14

Cal.App.4th 1262, 1267.) Thus, there was substantial evidence to support the trial court's finding that appellant conducted frivolous discovery or solely intended to cause unnecessary delay.

Moreover, appellant engaged in other conduct that supported the trial court's finding that he was a vexatious litigant. Regarding the first deposition, appellant's conduct was so disruptive that building security and police officers arrived to ensure that he left the building. Appellant argues that the trial court could not have relied on this conduct because he had "already been punished." However, appellant never complied with the April 29 order that he be deposed or that he pay monetary sanctions.

Regarding his failure to comply with the April 29 order, appellant first asserts that he could not afford to pay respondents and thus he authorized them to deduct the amount of money he owed them from the amount that they owed him. The trial court could reasonably infer that this assertion was false since appellant then hired counsel to bring a frivolous motion to set aside the August 3 order and for sanctions. Moreover, as previously discussed, the April 29 did not authorize appellant to satisfy his sanctions obligation in this manner.

Appellant also argues that he reasonably changed his mind about being deposed on May 5, 2011, because respondents refused to permit him to take a 30-minute break at 2:00 p.m. This argument is without merit. As previously discussed, appellant waived this issue because he failed to file objections in a timely manner. Moreover, appellant misrepresents the record. Respondents' counsel assured him that there would be adequate time for both parties to review the tentative ruling after it was posted.

In sum, there was substantial evidence to support the trial court's finding that appellant was a vexatious litigant within the meaning of Code of Civil Procedure section 391, subdivision (b)(3).

15

### III.  Disposition

The order is affirmed.

_____
Mihara, J.

WE CONCUR:

_____
Premo, Acting P. J.

_____
Márquez, J.