[Civ. No. 19290. First Dist., Div. Two. Nov. 1, 1960.]

R. E. CRUMMER, Respondent, v. CHARLES W. BEELER,
Appellant.

Angell, Adams, Gochnauer & Elder and Robert M. Adams, Jr., for Appellant.

Hagar, Crosby & Rosson for Respondent.

McGOLDRICK, J. pro tem.[*]—On May 4, 1959, R. E. Crummer filed suit against Charles W. Beeler for sums totalling $96,000, alleging defendant to be indebted to plaintiff in that amount, now due, owing and unpaid, for money had and received by defendant to and for the use and benefit of plaintiff. Defendant's answer denied plaintiff's allegations in their entirety. On July 27, 1959, plaintiff mailed notice to defendant's attorney for the taking of defendant's deposition on August 11, 1959. On August 20, 1959, plaintiff filed notice of a motion for an order to strike defendant's answer and to enter judgment by default against defendant pursuant to the provisions of section 2034, subdivision (d) of the Code of Civil Procedure. In support thereof, plaintiff's attorney alleged defendant's wilful failure to appear for his deposition as noticed. The court granted plaintiff's motion on September 23, 1959, and defendant subsequently filed notice of motion

---

[*]Assigned by Chairman of Judicial Council.

to reconsider said ruling on the grounds that it was harsh and unjust. On September 30, 1959, in proceedings on default judgment, the court heard testimony by plaintiff as to the substantive issues raised by the complaint, defendant making no appearance. On that date, the court ordered judgment for plaintiff in accordance with the prayer of his complaint. On October 9, 1959, the court denied defendant's motion to reconsider. On October 19, 1959, defendant noticed motions for new trial, to set aside and vacate judgment, for relief under section 473 of the Code of Civil Procedure (judgment taken by mistake, inadvertence, surprise, or excusable neglect), and for stay of execution. The court denied each of said motions, and from those orders and from the default judgment defendant now appeals.

In support of the August 20 motion for sanctions, plaintiff's attorney filed an affidavit to which he attached four exhibits, A, B, C, and D. Exhibit A is a letter from defendant's attorney in Santa Barbara to plaintiff's attorney in Oakland, dated July 31, 1959, in which defendant's attorney stated that he had received the notice for deposition, but that "I imagine you will have a little trouble serving a subpoena as [defendant] has been in the interior of Canada for several weeks." Defendant's attorney then explained that another law firm also desired defendant's deposition, and suggested the alternative dates of August 23 and 24 "if you can see your way clear to stipulate to the filing of the supplemental cross-complaint," which pleading was pertinent to another action involving plaintiff. Defendant's attorney explained that he would notice a motion for an order for leave to file said cross-complaint, except that "I do not know as the days suggested would correspond with the court's law and motion hearing calendar, and I would very much like to get these matters done in one trip up to the bay area."

Exhibit B is an answering letter from plaintiff's attorney to defendant's attorney dated August 3, 1959, wherein the former stated that "[w]e are not disposed to consider any postponement of the taking of Mr. Beeler's deposition, now scheduled for August 11."

Exhibit C is an answering letter from defendant's attorney dated August 6, 1959, in which he stated that "Mr. Beeler had permanently changed his residence from San Mateo County, California to Victoria, British Columbia, Canada, approximately one month prior to your service of the notice of taking deposition. Therefore, you have a choice, if you wish Mr.

Beeler's deposition under the circumstances: You can arrange for it courteously and cooperatively by stipulation, at a time convenient to you, myself and Mr. Beller [*sic*] ; otherwise, you will take it in Victoria, B. C., or not at all.'' Attorney for defendant also stated that the other law firm to which he had referred in his previous letter desired a date some time after September 15 for their deposition of defendant, and that '' [i] f you can see your way clear to arrange to take the deposition you wish on the day before or the day following the one I will arrange with [the other firm] I will still arrange to have Mr. Beeler present. . . .''

Exhibit D is an answering letter from plaintiff's attorney dated August 7, 1959, in which he stated that ''it is our intention to move for sanctions unless [Beeler] is present for the taking of his deposition [on August 11]. . . .'' Attorney for plaintiff referred to section 2019 of the Code of Civil Procedure, which provides, in part, that in case of a party witness, service of a subpoena upon the deponent is not required if proper notice of the taking of the deposition be made, and relies upon *Twin Lock, Inc.* v. *Superior Court* (1959), 171 Cal.App.2d 236 [340 P.2d 748] to substantiate this position.

The defendant did not attend the taking of his deposition on August 11, 1959, albeit his counsel was ready to have him available at a later date to be selected which was not agreed to by counsel for the plaintiff.

In order to justly dispose of this problem, an analysis of the background of the new act is appropriate. In 1957, the California Legislature enacted a new discovery act which incorporated in our state practice the essential features of the Federal ''Discovery Practice.'' (Federal Rules of Civil Procedure 26 and 27). As a premise for this discussion, we find an enlightening and cautionary article contained in California Law Review, volume 45, pages 511 and 513, wherein Louisell in his *Discovery Today* stated :

''Clearly, the new Act's enforcement provisions are adequate for fulfillment of the purposes of discovery. Perhaps it is appropriate to caution that especially until the Bar has assimilated the new features of the Act—a process that can be burdensome to practitioners schooled in a different tradition—the trial bench should apply the sanctions firmly but reasonably and understandingly. The utility, workability and success of discovery will ultimately not be as much a function of threats and sanctions as of its acceptance in reasonable fashion by the trial Bar. . . .

"Thus the courts have ample power to protect at least against most potential abuses of the discovery rules. . . . As noted, the wise and careful use by trial courts of their discretion in allowing or disallowing as taxable costs, the expenses of taking depositions can be a realistic and significant protective measure. In view of the wide discretion vested in trial judges to protect against abuse, as well as to enforce discovery, the significance of an able trial bench to sound and just judicial administration is further emphasized."

And at page 508, said: "One of the main achievements of the new act is the acceptance of the broad, cogent and closely coordinated enforcement provisions of Federal Rule 37 (substantially enacted in § 2034d of the Code of Civil Procedure) in the place of methods limited to 'rules relating to contempt and by the shadowy concept of the "inherent power" of the court.' "

Section 2034, subdivision (d), provides, in part, that if a party, or an officer, director or managing agent of such party, wilfully fails to appear for his deposition after being served with proper notice thereof, "the court on motion and notice may strike out all or any part of any pleading of that party, or dismiss the action or proceeding or any part thereof, or enter a judgment by default against that party. . . ."

The Twin Lock case, *supra*, is the first case wherein the provisions of the new section 2034, subdivision (d), Code of Civil Procedure were interpreted by the District Court of Appeal. In that case, petitioner sought a peremptory writ to enjoin respondent court from enforcing an order for the appearance of certain nonresident party witnesses. Petitioner contended that a court of this state is without power to impose sanctions pursuant to section 2034, subdivision (d), on account of the failure of a party witness to appear pursuant to the notice to take his deposition given under section 2019, in any case where the notice fixes the place of taking of said deposition outside of the county in which said party witness resides and more than 150 miles therefrom. He based this contention upon the provisions of section 1989 of the same code that a "witness is not obliged to attend as a witness" under such circumstances. However, the appellate court held that although the giving of notice places no compulsion upon the witness to attend, it does place compulsion upon the party to produce that witness, and that therefore if he be a party witness the court may impose sanctions against the party pursuant to section 2034, subdivi-

sion (d), even where notice fixes for the taking of the deposition a place outside the county in which the party witness resides and more than 150 miles therefrom.

In his affidavit in opposition to the motion for sanctions, defendant's attorney averred that his position as outlined in the correspondence embodied in Exhibits A-D had been based on his opinion that defendant could not be compelled to attend the taking of his deposition on August 11, in view of section 1989. He further stated that he had not become aware of the Twin Lock decision, *supra,* until too late to arrange for defendant's appearance on the noticed date. He averred that he had not intended to refuse defendant's deposition, but only to arrange a convenient time therefor. Attached to this affidavit is a letter from defendant's attorney to plaintiff's attorney dated August 20, 1959, in which the former referred to the enclosure therein of a notice of taking deposition of plaintiff on September 16, 1959, and offered to make defendant available for similar proceedings at that time.

When the trial court granted plaintiff's motion for sanctions pursuant to the provisions of section 2034, subdivision (d), Code of Civil Procedure, it made no findings in support of this ruling. Although the order indicates that the court considered evidence, both oral and documentary, in the hearing on said motion, the reporter's transcript is mute as to what occurred in these proceedings. ■■■ There is, of course, no necessity that a court make findings on an order made after motion (*Beckett* v. *Kaynar Mfg. Co.,* 49 Cal.2d 695 [321 P.2d 749]; *Ramey* v. *Myers,* 159 Cal.App.2d 82 [323 P.2d 805]). ■■■ In the absence of proceedings to augment or to correct it, the record must be presumed to include all matters material to appellate review (*Meyer* v. *State Board of Equalization,* 42 Cal.2d 376 [267 P.2d 257]; rule 52, Rules on Appeal). "In other words, the record on appeal is regarded as conclusive. . . ." (4 Cal.Jur.2d 242.)

The record shows that the evidence before the trial court at the time of its ruling on plaintiff's motion for sanctions included an affidavit by plaintiff's attorney, filed June 10, 1959, in support of his opposition to defendant's motion to quash a writ of attachment and to dissolve the levy thereof, wherein he stated that said attachment had been requested because affiant believed defendant to be liquidating all his assets within the continental United States and establishing a home in Canada. It also included the aforementioned letter from defendant's attorney to plaintiff's attorney in which the

former stated that defendant's permanent residence was in Canada.

The only evidence that was before the trial court that refutes this latter statement is contained in a copy of a portion of defendant's deposition taken in another action on August 26, 1959, which was attached to the affidavit referred to as being filed by plaintiff's attorney. A reference to this evidence will be discussed later on in this opinion.

It is apparent also from the record that either the trial court based its order granting the motion for sanctions on this bit of evidence; otherwise, the only other basis for the granting of the motion for sanctions would be the District Court of Appeal's holding in the Twin Lock case. Moreover, if the granting of plaintiff's motion was based solely upon the Twin Lock case, it was erroneous, for on October 9, 1959, the Supreme Court overruled that decision in *Twin Lock, Inc.* v. *Superior Court,* 52 Cal.2d 754 [344 P.2d 788]. The court there held that the word "witness" as it is used in section 1989 includes a prospective witness who is a party, and "obliged" is sufficiently broad to preclude the imposition of sanctions under section 2034, subdivision (d), for failure of a party witness to attend. It should be noted that the 1959 amendment to Code of Civil Procedure, section 2019, subdivision (b)(2) (Stats. 1959, ch. 1590, p. 3922, § 2) was not in effect when this deposition was noted, and is not herein involved.

A consideration of the order granting sanctions may not be finally concluded at this point for at the hearing on defendant's subsequent motions for a new trial, to set aside and vacate the judgment, for relief under Code of Civil Procedure, section 473, and for a stay of execution, additional evidence was brought before the court. There was further substantiation of that which tended to place defendant's residence in Canada. But as pointed out previously, there was also evidence of a contrary nature, viz., that portion of defendant's deposition taken in another proceeding previously referred to, wherein he testified that he was a resident of the City of Hillsborough, County of San Mateo, State of California both on the date of the notice of deposition and on the date set therein for that proceeding. The exhibit referred to alleges that in answer to the question "and where do you live?" defendant gave the Hillsborough address. It is our view that the court could find from the evidence before it that either the defendant resided in Canada or in Hillsborough.

The basic question, therefore, to be determined is whether or not, assuming that such finding of the court is justified in the exercise of its discretion in granting plaintiff's motion for sanctions pursuant to section 2034, subdivision (d), they were reasonable or justifiable or an abuse of discretion.

The enactment of the present sections 2016-2035, Code of Civil Procedure, was proposed to the Legislature as an adoption by this state of federal rules of procedure relative to discovery and with the express purpose of broadening discovery proceedings in California to the end that they would be comparable with those proceedings in the federal courts (Report of the Committee on Administration of Justice, 31 Cal. State Bar J. 204-231). These statutes are, in substance, exact counterparts of the federal rules. Therefore, the Legislature must have intended that they should have the same meaning, force and effect as have been given the federal rules by the federal courts (*Scripps Memorial Hospital, Inc.* v. *California Emp. Com.*, 24 Cal.2d 669 [151 P.2d 109, 155 A.L.R. 360]; *Holmes* v. *McColgan*, 17 Cal.2d 426 [110 P.2d 428]).

On many occasions the courts have attempted to define "abuse of discretion." In *Sharon* v. *Sharon*, 75 Cal. 1 at p. 48 [16 P. 345], the court had this to say: "In a legal sense, discretion is abused whenever, in its exercise, a court exceeds the bounds of reason,—all the circumstances before it being considered."

Bouvier's Law Dictionary, volume 1, page 94, defines "abuse of discretion" as "A discretion exercised to an end or purpose not justified by and clearly against reason. . . ."

Under either of the above or any other definition with which our research has been rewarded, can it be said that under the facts and circumstances here present, the sanctions employed were reasonable and justifiable? We think not.

The purpose of Federal Rule 37 (§ 2034, subd. (d)) and the other provisions relative to discovery is not to provide a weapon for punishment, forfeiture and the avoidance of a trial on the merits (*Mitchell* v. *Johnson*, 274 F.2d 394; *Societe Internationale etc. Commerciales* v. *Rogers*, 357 U.S. 197 [78 S.Ct. 1087, 2 L.Ed.2d 1255], but ". . . to secure the just, speedy and inexpensive determination of actions." (*Babcock & Wilcox Co.* v. *North Carolina Pulp Co.*, 25 F.Supp. 596]. In case after case, where a party has either unintentionally or wilfully disregarded the service of interrogatories or notice of the taking of his deposition, federal courts have deferred

the imposition of sanctions under rule 37 in order that the defaulting party might have additional opportunity to comply (*Collins* v. *Wayland*, 139 F.2d 677; *Gill* v. *Stolow*, 240 F.2d 669; *Madison* v. *Cobb*, 29 F.Supp. 881; *O'Neill* v. *Blue Comet Cab Corp.*, 21 F.R.D. 161; *Rifkin* v. *United States Lines*, 24 F.R.D. 122; *Schesler* v. *American Milk Products Co., Inc.*, 8 F.R.D. 259; *Socha* v. *Webber*, 11 F.R.D. 124). In *Saltzman* v. *Birrell*, 156 F.Supp. 538, notice was duly served to take defendant's deposition on February 15, 1957. Thereafter, at his request, the deposition was adjourned from time to time and finally until May 10, 1957, this latter date having been set by order of the court, defendant failed to appear. However, "rather than taking a snap default," attorneys for the plaintiffs then asked defendant's attorney to fix a new date. This having been done, defendant again failed to appear, whereupon plaintiffs brought on a motion to strike out his answer and to enter judgment by default. On the return day of this motion no appearance or objection was made on behalf of defendant, and the court granted said motion. Nevertheless, notwithstanding this grossly wilful disregard of the processes of the court, although defendant's subsequent motion to open his default, to vacate the order striking out his pleading, and to set aside the judgment entered in accordance therewith was denied, the court concluded its opinion with the following:

"However, the Court recognizes that it is undesirable to dispose of litigation on a mere default in appearance by one of the parties if some other procedure can be adopted. The Court, therefore, will be ready to reconsider its determination and to open the default upon proof that the defendant . . . has appeared at this courthouse . . . for the taking of his deposition on or before December 10, 1957, and that his deposition has been taken and completed. The date to be fixed for the taking of the deposition could be determined between counsel." (P. 540.)

In those cases relied upon by plaintiff, wherein the imposition of such sanctions was upheld, either opposing counsel had afforded the defaulting party additional opportunity to comply (*Brookdale Mill, Inc.* v. *Rowley*, 218 F.2d 728; *Milewski* v. *Schneider Transportation Co.*, 238 F.2d 397; *Loosley* v. *Stone*, 15 F.R.D. 373) or said party's failure to appear involved disregard of a specific court order (*Bourgeois* v. *El Paso Natural Gas Co.*, 257 F.2d 807).

California authorities indicate, insofar as they have been

called upon to interpret the state's enforcement provisions adopted from Federal Rule 37 that they subscribe to the lenient tenor of these federal decisions. Thus in *Twin Lock, Inc.* v. *Superior Court*, *(Cal.App.) 340 P.2d 743, 748, the court said:

"It must not be understood from what we have just stated that we entertain any thought that the respondent court will take the drastic step of imposing the sanctions asked . . . , without first providing a reasonable further opportunity for petitioner to comply with the notice of the taking of the depositions in question." (See also DeMeo, California Depositions and Discovery Practice, § 1313, pp. 366-368).

 The defendant's affidavits filed in support of his motions for new trial, etc. stated that "at all times since the filing of the complaint . . . [he] has been and now is ready, able and willing to have his deposition taken and to respond to any notice of taking his deposition of which he has sufficient knowledge in advance to enable him to appear. . . ." This offer was also reiterated by his attorney at the hearing of said motions and stated that the defendant was, in fact, present that day (the date of hearing these motions) in connection with his deposition in another, related litigation.

In *Gill* v. *Stolow, supra,* in reversing a default judgment for plaintiff based on defendant's failure to be present for the taking of his deposition, the court found defendant's subsequent appearance and readiness to testify to be persuasive factors.

We, therefore, conclude that although the proper disciplining of a party under circumstances of default must be left to the discretion of the trial court, the penalty assessed here is too "drastic" and constitutes a clear abuse of discretion. It should be noted, however, that a penalty assessed which included payment of respondent's costs and attorney's fees in attending in connection with the proceeding, would have been more justifiable. The applicability of section 473, Code of Civil Procedure, for relief under these circumstances is proper.

The order striking defendant's answer and entering his default is vacated and the judgment of the trial court is reversed.

Draper, Acting P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied December 1, 1960.

---

*A hearing was granted by the Supreme Court on July 13, 1959. The final opinion of that court is reported in 52 Cal.2d 754 [344 P.2d 788].