[Civ. No. 27861.   Second Dist., Div. One.   Mar. 5, 1965.]

EUGENE MELLONE et al., Plaintiffs and Appellants, v. RAYMOND W. LEWIS, Defendant and Respondent.

Wolver & Wolver, and Eugene L. Wolver for Plaintiffs and Appellants.

Morgan, Holzhauer, Burrows, Wenzel & Lynberg and Charles A. Lynberg for Defendant and Respondent.

WOOD, P. J.—This is an action for damages allegedly resulting from food poisoning, allegedly caused by the defendant's negligence and breach of warranty (as a caterer) in preparing and serving a wedding dinner at which the plaintiffs were guests. There were 19 plaintiffs and 38 causes of action herein.

This action was consolidated with 28 similar actions filed by other guests who were at the wedding (i.e., 29 actions were consolidated). There were multiple plaintiffs and causes of action in most of the actions.

At the pretrial conference, the claims of 11 of the 19 plaintiffs in this present action were settled, and 16 of the 29 consolidated actions were settled. In other words, after the settlements there were eight remaining plaintiffs in the present action, and there were 13 consolidated actions.

In a jury trial, the issue of liability (in all the 14 cases) was tried first, and the jury answered special interrogatories, with respect to liability, in favor of plaintiffs in all the cases —finding against the defendant on the basis of breach of implied warranty of fitness of the food.

Thereafter, the trial proceeded as to the issue of damages for several days, and then (after evidence as to damage had been presented in the *Giani* case herein) the plaintiffs in the present case made a motion for a severance of their trial, as to the issue of damages, from the trial of the other 13 consolidated cases. The motion was denied. The trial proceeded

thereafter for approximately three weeks, and verdicts in all the cases were returned.

In the present case, the verdict was for the eight plaintiffs, as follows: $200 each for four plaintiffs; $1,250 each for two plaintiffs; $500 for one plaintiff; and $150 for one plaintiff. Judgment was in accordance with that verdict. The eight plaintiffs (in the present case) appeal from the portion of the judgment stating the amounts awarded upon the issue of damages, but they do not appeal from the portion of the judgment as to the issue of liability for damages. (Plaintiff John Mellone is not referred to in the briefs as an appellant.)

Appellants' first contention is that the court abused its discretion in denying their motion for a severance of their trial, as to the issue of damages, from the trial of the other 13 consolidated cases (i.e., in denying them a separate trial by a different jury as to the issue of damages). The motion was made on the ground that (1) Dr. Gilbert's testimony regarding damages in the *Giani* case (which testimony had just been given), and (2) the "hostility" between Dr. Gilbert and counsel for plaintiffs in the *Giani* case, would have a prejudicial effect[1] with respect to the doctor's testimony which plaintiffs in this case intended to offer. He was a medical expert witness who was to be called by the plaintiffs in this case. The motion for a separate trial as to damages was denied. The record herein does not include a reporter's transcript of the proceedings wherein the asserted hostility purportedly occurred. The record does include a statement of the judge (made in chambers when the motion for a separate trial was heard) to the effect that the asserted hostility was caused by the conduct of counsel for plaintiffs in the *Giani* case, and was not caused by the conduct of Dr. Gilbert. The record also shows that, although counsel for plaintiffs in the *Giani* case asked permission (in chambers) to examine

---

[1] In the *Giani* case, Dr. Gilbert testified in effect that it was not necessary to hospitalize Mr. and Mrs. Giani for treatment in connection with the claimed food poisoning, but that they were hospitalized for other reasons. He also testified that "much of the treatment rendered to Mrs. Giani while in the hospital was by reason of a preexisting condition not the proximate result of food poisoning." The attorney for Mr. and Mrs. Giani then made a motion to examine Dr. Gilbert as a hostile witness under section 2049 of the Code of Civil Procedure, upon the ground that the hospital records showed that Mrs. Giani was admitted to the hospital and treated therein because of food poisoning. The judge heard this motion in chambers and expressed his opinion that the hostility was caused by the attorney rather than by Dr. Gilbert. The motion was then withdrawn by counsel, proof of damages resumed, and the jury returned verdicts of $477.30 for Mr. Giani and $1,000 for Mrs. Giani.

the doctor as a hostile witness, he (counsel) withdrew the request and did not examine him as such a witness. Prior to the time the motion for a separate trial was made, the jury had been trying the issue of damages in some of the consolidated cases for several days and prior thereto had tried the issue of liability for several days and had rendered verdicts thereon. (The trial had proceeded approximately a week before this motion was made.) The testimony of the plaintiffs in the present case with respect to the issue of liability (which testimony the jury had heard) might have been a material factor for the jury's consideration in determining the credibility of the plaintiffs with respect to the issue of their damages. The pretrial order recited that unless a jury be waived, there should be a trial of all issues before the same jury—first as to the issue of liability, and then as to the issue of damages. ██ "Whether separate actions shall be consolidated for trial or whether there shall be a severance and separate trials of issues in a single action is matter within the discretion of the trial court." (*McArthur* v. *Shaffer,* 59 Cal.App.2d 724, 727 [139 P.2d 959]; see Code Civ. Proc., § 1048.) ██ In the present case, the court did not abuse its discretion in denying plaintiffs' motion for a separate trial before a different jury on the issue of damages.

Appellants contend further that the court erred in excluding some of plaintiffs' evidence regarding special damages. Such evidence was excluded on the ground that plaintiffs had not complied with provisions of the pretrial order requiring disclosure of such evidence to defendant at least 90 days before trial.

After plaintiffs' motion for a separate trial had been denied, and after the trial as to the issue of damages had been resumed, the plaintiffs called Dr. Gilbert as a witness on their behalf and asked him whether he had rendered a bill to one of the plaintiffs. The defendant objected to the question on the ground that plaintiffs had failed (with respect to this bill) to comply with the pretrial order which required that such a bill be submitted to counsel for defendant at least 90 days before the trial. The trial was commenced on December 10, 1962. Plaintiffs (appellants) assert that, on December 3, 1962 (seven days before trial), they furnished to defendant the information required by the pretrial order. The objection to the question (regarding the bill) was sustained.

At a three-day pretrial conference in July 1962, detailed

and comprehensive orders relative to parties, issues, and procedure were made. Mr. Eugene L. Wolver, one of the attorneys for plaintiffs herein, was present at the conference. One order, made over objections of plaintiffs, consolidated the 13 cases for all purposes. Another order (made pursuant to stipulation) provided for simplification of the record in the cases. The other order was a pretrial conference order, consisting of nine pages.

Subheading ''G'' of the pretrial order is titled, ''Evidence, *Discovery* and Law and Motion.'' (Italics added.) Section 2 of this subheading provides, in part:

''With the *consent* of counsel for all parties, it is ordered that: [Italics added.]

''a. Counsel for each plaintiff notify counsel for defendant . . . at least 90 days before trial, the names of each plaintiff contending he is not fully recovered . . . .

''b. Counsel for each party . . . exchange copies of their medical reports . . . within 30 days from date hereof . . . .

''c. Counsel for each plaintiff submit to counsel for the defendant and each cross-defendant at least 90 days before trial an itemized list of all special damages claimed by each respective plaintiff, and also a statement of the period of total and partial disability claimed by each respective plaintiff.

''d. Counsel for each plaintiff submit to counsel for the defendant . . . at least 90 days before trial the name and address of the employer of each plaintiff claiming loss of earnings, and the necessary authority for counsel for the defendant . . . to make . . . inspection and copies of the employment records . . . .

''e. Counsel for each self-employed plaintiff claiming loss of earnings to permit the defendant . . . to . . . audit . . . the books and records of each of such plaintiffs for the period of at least 12 months . . . on condition that this audit be completed at least 30 days prior to trial . . . .

''f. Counsel for each plaintiff claiming hospitalization . . . give counsel for the defendant . . . upon demand, the necessary authority . . . to make . . . inspection . . . of said hospital records.''

Section 3 of said ''subheading G'' provides, in part: ''Because of the large number of parties involved in this litigation, and the continuous efforts to settle claims, discovery has not been completed. The parties are given the right to take depositions and to submit interrogatories in accordance with the prevailing rules and practice, subject, however, to the limita-

tions that . . . all depositions and interrogatories must be completed at least 60 days prior to trial.''

On December 26, the defendant's objection to the question regarding Dr. Gilbert's bill had been sustained (on the ground that plaintiffs had not complied with the pretrial order), proceedings were had in chambers, where Mr. Eugene L. Wolver, representing the plaintiffs, made an offer of proof in support of his contention that plaintiffs had complied with the order. The offer of proof, consisting of statements by Mr. Wolver, was to the following effect:

Mr. Wolver ''pulled this file'' on November 29, 1962, and noticed that there was no record of compliance with the pretrial order. The next day (10 days before the trial) he telephoned Mr. Lynberg, one of the attorneys for defendants, and said that he (Mr. Wolver) would make a motion to be relieved from the provision of the pretrial order, by reason of the illness and death of Mr. McMullen (an attorney associated with the law firm of Wolver and Wolver) to whom the case had been assigned for preparation. That Mr. Lynberg replied that if Mr. Wolver would furnish the necessary facts to him immediately, he (Mr. Lynberg) would have the opportunity to prepare for trial. On December 3, 1962, Mr. Wolver wrote and sent a letter to Mr. Lynberg, listing therein plaintiffs' special damages and attaching thereto medical reports and employee authorizations. (This letter was marked Exhibit 3 for identification.) Mr. Wolver said that Dr. Gilbert's testimony would be in support of the statements of damage as shown by the letter. Mr. Wolver also stated in substance that there were seven attorneys in his law firm and this case had been assigned to Mr. McMullen (an attorney in the firm); Mr. McMullen had not communicated with defense counsel regarding the claimed items of special damages; Mr. McMullen was preparing to comply with the pretrial order, but he became ill near the end of September 1962; he informed Mr. Wolver in early October 1962 (about October 4) that he (Mr. McMullen) was in a position to comply, and would comply, with the pretrial order within a day or two thereafter; Mr. McMullen died on October 11, 1962; that defendant's investigator obtained information relating to plaintiffs' employment records and reported this information to Mr. Lynberg. (Mr. Lynberg said that he had sent the investigator to obtain this information pursuant to the authorizations, and that the investigator was ''out'' for this purpose during the first week of the trial.)

With reference to the offer of proof, Mr. Lynberg admitted that, on November 30, Mr. Wolver stated his intention to make a motion to be relieved from the provisions of the pretrial order. Mr. Lynberg said, however, that the only statements he made to Mr. Wolver were to the effect that plaintiffs were in default under the pretrial order with regard to itemization of the special damages and that he wanted all of the information he could get to enable him to protect his client and prepare for trial. Mr. Lynberg also stated (in response to a question by the court) that he had not intended to waive plaintiffs' noncompliance with the pretrial order.

The motion to be relieved from the provisions of the pretrial order was denied.

On the next day of the trial (December 27), Mr. Wolver made a motion (in chambers) that the court reconsider its order excluding the evidence. This motion was made on the ground that plaintiffs' complaint pleaded the amount of medical expenses and loss of earnings incurred by each plaintiff, and that such pleading satisfied the pretrial order. (The complaint sets forth the total amount of medical expenses allegedly incurred by each plaintiff, and the total amount of loss of earnings as to each plaintiff who claimed loss of earnings. The complaint also states, as to each plaintiff, that there will be further medical expenses in an amount which is unknown to plaintiffs at the time of filing the complaint.)

In conjunction with this second motion Mr. Wolver made an offer of proof to the effect: that he had seen, in August of 1962, a letter which Mr. McMullen had prepared in longhand, addressed to defense counsel, relating to the itemization of plaintiffs' claimed medical expenses and loss of earnings; and that it was the practice in his law firm that he (Mr. Wolver) personally approve longhand letters before the letters were typed in final form. (The record does not show whether the longhand letter, so referred to, had been approved by Mr. Wolver or typed in final form; and the record does show that the letter was not sent to defendant or his counsel. In their briefs, appellants assert that the letter was approved and typed in final form. The letter, in longhand or in typewriting, was not presented to the court, and no copy of it was presented.) This motion to reconsider the order excluding evidence was denied.

The next day (December 28) Mr. Wolver again made a motion (in chambers) for permission to present evidence regarding the items of special damages as to which the court had excluded evidence. The motion was denied.

The record on appeal includes a clerk's transcript, a settled statement, and portions of a reporter's transcript, which portions relate to proceedings in chambers on the various motions. The record does not include any of the testimony presented on the issue of damages in this action. The minutes show that, during the trial on the issue of damages, Dr. Gilbert, Dr. Freibrun, and the eight plaintiffs testified on behalf of the plaintiffs. It is obvious that there was evidence on behalf of plaintiffs regarding damages, since the jury awarded an amount of money (as above shown) to each plaintiff. It cannot be determined from the record, however, what items of damage were specified or referred to in the evidence presented on behalf of plaintiff, and upon which the jury made the awards; nor does the record show the nature, description, or amounts of items of special damages which were excluded by the court.

Appellants argue, with reference to their contention that the court erred in excluding evidence, that (1) the court lacked authority to exclude the evidence, (2) the court received similar evidence over similar objections in two of the other consolidated actions, and (3) under the circumstances, plaintiffs should have been relieved from their noncompliance with the order.

California Rules of Court (rules 208 to 222 inclusive) prescribe rules applicable to pretrial proceedings. Rule 210(d) and rule 212(a)(7), provide in substance that the court may consider and act upon discovery matters, and may prescribe time limits for completion thereof. Rule 212(b) provides that the pretrial judge may act upon stipulations made at the pretrial conference. Rule 214 provides that the pretrial judge shall prepare and sign an order, and that such order shall contain, among other things, a concise statement of matters agreed upon or admitted, and a concise statement of every ruling and order made by the judge at the conference.

In the present case, the evidence and *discovery* provisions of the pretrial order were made in compliance with the above cited rules, and pursuant to the *consent* of counsel for all the parties. These provisions, which were placed in the order under the subheading, "Evidence, *Discovery* and Law and Motion" (italics added), set forth detailed procedure for the submission by plaintiffs to defendant of itemized claims for their medical expenses and loss of earnings. An express time limit ("at least 90 days before trial") was set within which "plaintiffs shall submit" such itemized claims, and an express

time limit thereafter (at least 30 days prior to trial) was set within which defendant might conduct medical examinations and audits to verify the claims so presented. Provisions were also made for the exchange of medical reports,[2] and a definite time limit (60 days before trial) was set within which deposition and interrogatory matters were to be completed.

■ When the pretrial order was filed, it became part of the record in the case, and controlled the subsequent course of the case. (See Cal. Rules of Court, rule 216; and *Feykert* v. *Hardy*, 213 Cal.App.2d 67, 74 [28 Cal.Rptr. 510].) In the *Feykert* case, it is also stated (p. 74) that the purpose of pretrial procedure is " 'to place the case in focus,' " and that the trial judge has a right to rely upon the posture of the case as defined by the pretrial order (citing *Baird* v. *Hodson*, 161 Cal.App.2d 687, 690 [327 P.2d 215]).

Rule 217 provides for sanctions which may be imposed for failure to prepare for, appear at, or participate in, the pretrial conference, but none of the rules promulgated by the Judicial Council with reference to pretrial proceedings expressly provides for sanctions or procedures to be followed in the event of noncompliance by a party with the pretrial order.

It has been held, however, that the court has inherent power to implement and enforce effective conduct of judicial proceedings held pursuant to the pretrial rules promulgated by the Judicial Council. (See *Cantillon* v. *Superior Court*, 150 Cal.App.2d 184, 187 [309 P.2d 890]; and Code Civ. Proc., § 128, subds. 3, 4.)

In *Tide Water Assoc. Oil Co.* v. *Superior Court*, 43 Cal.2d 815, 825 [279 P.2d 35], it is said that: "Courts have inherent power, as well as power under section 187 of the Code of Civil Procedure,[3] to adopt any suitable method of practice, both in ordinary actions and special proceedings, if the procedure is not specified by statute *or by rules adopted by the Judicial Council*. It is not only proper but at times may be necessary for a court to follow provisions of the Code of Civil Procedure which are harmonious with the objects and

---

[2] Existing medical reports were to be submitted within 30 days after the pretrial order of July 23, 1962.

[3] Section 187 of the Code of Civil Procedure provides: "When jurisdiction . . . is conferred on a Court or judicial officer, all the means necessary to carry it into effect are given; and in the exercise of this jurisdiction, if the course of the proceeding be not specifically pointed out in this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

purposes of the proceeding although those provisions are not specifically made applicable by the statute which creates the proceeding.'' (Italics added.)

■ Section 2034 of the Code of Civil Procedure provides for sanctions which may be imposed for disobedience of discovery orders. Although this section is not made specifically applicable to pretrial orders, it does provide a suitable method of practice harmonious with the purposes of implementing and enforcing the portions of the present pretrial order relating to evidence and discovery. As above shown, these portions of the pretrial order were made pursuant to consent of the parties, and they pertain to evidence and discovery matters, appear under a subheading of the order titled ''Evidence, Discovery and Law and Motion,'' and were made pursuant to the express authorization of the rules promulgated by the Judicial Council relating to pretrial proceedings.

Said section 2034, subdivision (b)(2), provides in substance that if any party disobeys a discovery order, the court may make such orders in regard to the refusal as are just, including (as stated in subsection (ii)) an order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing in evidence designated documents or things or items of testimony.

■ In view of the pretrial rules and the said code sections, and the case law applicable thereto, the court had authority to exclude evidence of claimed special damages which was not submitted in compliance with the order.

Appellants argue further that exclusion of such evidence on the ground of plaintiffs' noncompliance with the pretrial order constituted an abuse of discretion under the decisions in *Caryl Richards, Inc.* v. *Superior Court*, 188 Cal.App.2d 300 [10 Cal.Rptr. 377], and *Crummer* v. *Beeler*, 185 Cal.App. 2d 851 [8 Cal.Rptr. 698]. These cases are distinguishable from the present case.

In the *Caryl Richards* case, plaintiff received eye injuries from a hair spray while she was a customer in defendant's beauty shop. One of the several interrogatories propounded by plaintiff to defendant in effect requested information as to the ingredients in the hair spray. Defendant did not answer this interrogatory in sufficient detail, and plaintiff obtained an order that defendant give a more detailed answer. When defendant again answered in insufficient detail, the court made an order striking defendant's answer (to the complaint) and entering defendant's default. In holding that this was an

abuse of discretion, the reviewing court stated in substance that the sanction was too broad and that an appropriate order, for the purposes of the trial, would have been that the hair spray might cause injury to the human eye. In the present case the court, by reason of plaintiffs' noncompliance with provisions of the pretrial order to which they had consented, limited its order to the exclusion of particular items of evidence of special damages for which plaintiffs had not submitted itemizations as required by the pretrial order. Plaintiffs were permitted to present evidence (including the testimony of Dr. Gilbert, whose bills were apparently among the items of evidence excluded), and the jury returned verdicts in favor of plaintiffs for the amounts above stated.

In the *Crummer* case, the plaintiff's attorney mailed a notice of deposition to defendant's attorney, stating that defendant's deposition would be taken on a specified date which was approximately 15 days from the date of the notice. Defendant's attorney sent a letter to plaintiff's attorney advising that the defendant was out of the state and suggesting alternative dates for taking the deposition later in the month. Plaintiff's attorney replied that he would not consider another date. After defendant failed to appear on the date originally specified by plaintiff's attorney, the court granted plaintiff's motion to strike defendant's answer and enter his default. The reviewing court held that the ruling of the trial court was an abuse of discretion.

Sanctions have been upheld for noncompliance with discovery orders. (See *Unger* v. *Los Angeles Transit Lines,* 180 Cal.App.2d 172, 186 [4 Cal.Rptr. 370, 5 Cal.Rptr. 71], wherein it was held proper to strike defendant's answer and enter default where defendant failed to comply with an order to provide plaintiff with the names and addresses of witnesses to an accident.) It has also been held proper to exclude evidence which varies from the issues as narrowed by the pretrial order,—as against a claim that such evidence may have been relevant under the original pleadings. (See *Feykert* v. *Hardy, supra,* 213 Cal.App.2d 67.)

Appellants also argue that the court abused its discretion in excluding the evidence because it received similar evidence over similar objections in two of the other consolidated actions. The record shows that in those actions the plaintiffs (as to whom the evidence was received) had presented itemized lists of such evidence to the defendant at the pretrial conference or they had given itemized information to defendant by telephone more than 90 days before the trial. It ap-

pears that, otherwise, the court required the plaintiffs in the other actions to comply strictly with the pretrial order.

Appellants claim that their counsel told defendant's adjustor at the pretrial conference that their special damages and loss of earnings were in the amounts pleaded in the complaint. The allegations in the complaint do not itemize plaintiffs' claimed medical expenses and loss of earnings, but plead the total amount of medical expenses and loss of earnings of each plaintiff as of the date of the complaint, and they also allege that there will be future medical expenses in an amount unknown at that time. ██ Statements which may have been made at the pretrial conference, other than as appear in the pretrial order, may properly be disregarded at the trial. (See Cal. Rules of Court, rule 211(d).)

██ Appellants also argue that the court abused its discretion in refusing to relieve plaintiffs from their noncompliance with the pretrial order. Appellants argue in effect that the case had been assigned to Mr. McMullen (a member of the law firm representing plaintiffs) ; that Mr. McMullen was preparing to comply with the pretrial order when he became ill; and that there would have been compliance with the order if Mr. McMullen had not passed away. The record shows that there were seven attorneys in the law firm (Wolver and Wolver) which represented plaintiffs in this action; the complaint was signed by Mr. Eugene L. Wolver; all appearances in court made on behalf of plaintiffs (including appearances at the pretrial conference where counsel consented to the evidence and discovery provisions of the pretrial order) were made by Mr. Wolver; Mr. McMullen did not become ill until approximately three weeks after the expiration of the time limit for complying with the order; the longhand letter prepared by Mr. McMullen, in connection with the pretrial order, was not typed or sent to defendant.

Appellants also argue, with reference to their contention that they should have been relieved from the order, that they made an effort to comply with the order by sending the required information to defendant by letter seven days before the trial; and that defendant, by accepting the letter and by answering "ready" when the trial was called, waived plaintiffs' noncompliance with the order. The record does not show what information was included in the letter. If it be assumed the information therein did satisfy the requirement of the order for itemization, the question as to whether evidence thereof should be received, over an objection of

noncompliance with the order, was a matter to be determined by the trial judge under the facts of the situation. The judge heard (in chambers) the statements by the attorneys as to what was said and done in connection with the sending and receipt of this letter (seven days before the trial). Mr. Lynberg said in effect that he was trying to obtain what information he could obtain in order to protect his client and that he did not intend to waive plaintiffs' noncompliance with the order. Furthermore, if the sending of the letter seven days before the trial had been regarded as a compliance with the order, or if the receipt of it had been regarded as a waiver of the time requirement of the order, the defendant would have been deprived of his right to 30 days, under the order, in which to verify the proposed evidence by examinations and audits. Under such circumstances, it is apparent that the attorney for the defendant, in the 13 consolidated cases (with multiple plaintiffs in most of the cases), would be placed, as stated by the trial judge, "in a very difficult position." As above shown, the order prescribing the methods and time limits to be followed by the parties with regard to evidence and discovery matters was made with the consent of the parties. It cannot be said that the court erred in denying plaintiffs' motion to be relieved from their noncompliance with the order.

It does not appear that the court abused its discretion in excluding the proposed evidence referred to in the letter which was sent to defendant seven days before the trial.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied March 30, 1965, and appellants' petition for a hearing by the Supreme Court was denied April 28, 1965.